UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AEYE, INC.<br>f/k/a CF FINANCE ACQUISITION CORP. III,<br><br>       Plaintiff,<br><br>  v.<br><br><br>ALL BLUE FALCONS FZE,<br><br>       Defendant. | Case No. 1:22-cv-04964<br><br>**COMPLAINT** |

Plaintiff AEye, Inc. f/k/a CF Finance Acquisition Corp. III ("AEye" or "Plaintiff"), by and through its undersigned attorneys, Sher Tremonte LLP, files this Complaint against defendant All Blue Falcons FZE ("All Blue" or "Defendant") and alleges as follows:

**NATURE OF ACTION**

1. This action arises from a fully executed written agreement that required All Blue to pay $5,000,000 to purchase shares of Plaintiff. Without any justification, All Blue has not paid a single dollar of that amount. Because All Blue's obligations are clear, Plaintiff AEye is compelled to commence this legal action to enforce its rights under the agreement.

2. On February 17, 2021, All Blue entered into a subscription agreement (the "Subscription Agreement") with Plaintiff, then known as CF Finance Acquisition Corp. III ("CF III"). Pursuant to the express terms of the Subscription Agreement, All Blue committed to purchase 500,000 Class A common shares of CF III for $5,000,000 upon the occurrence of a business combination by and among CF III, its wholly owned subsidiary Meliora Merger Sub, Inc., and the target company AEye, Inc. (the "Merger"), with CF III taking on the name AEye, Inc. upon the completion of the Merger.

1

3. The Merger was consummated on August 16, 2021 and Plaintiff performed all of its obligations under the Subscription Agreement by that date.

4. But All Blue failed to deliver the purchase funds, thereby breaching the Subscription Agreement.

5. AEye brings this action to enforce the unambiguous terms of the Subscription Agreement and to recover at least $5,000,000 in damages arising from All Blue's breach.

## THE PARTIES

6. AEye is a public company incorporated under the laws of Delaware, with its principal place of business located at One Park Place, Suite 200, Dublin, California 94568.

7. Upon information and belief, All Blue is a corporation organized in the United Arab Emirates ("UAE").

8. Upon information and belief, All Blue's principal place of business is located in London, United Kingdom ("UK"). That information and belief is based, in part, on the fact that All Blue identified an address in the UK as the address for notice to be received under the Subscription Agreement and that All Blue also identified an address in the UK as the address for the delivery of shares that are the subject of the Subscription Agreement.

9. In the alternative, if All Blue's principal place of business is determined to be not in the United Kingdom, then upon information and belief and based on publicly available information, All Blue's principal place of business is located in Dubai, UAE.

## JURISDICTION

10. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because this is a civil action where the matter in controversy exceeds $75,000, exclusive of interest and costs, between a citizen of a state and a citizen or subject of a foreign state.

11.	AEye is a citizen of California and Delaware.  Upon information and belief, All Blue is a citizen of the UAE and the UK.  The amount in controversy is at least $5,000,000.

12.	This Court has personal jurisdiction over All Blue, including without limitation, because it consented to this Court's exercise of personal jurisdiction by entering into the Subscription Agreement, which required the parties to "submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York."

13.	Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) and because the Subscription Agreement calls for venue in this judicial district.

## FACTUAL BACKGROUND

### A. The SPAC

14.	In March 2016, CF III was formed under Delaware law as a special purpose acquisition company ("SPAC").

15.	A SPAC is an investment vehicle that is organized by one or more sponsors (typically investment banks) to raise capital in an initial public offering ("IPO") for the purpose of acquiring and/or merging with a target private company in a transaction that results in the target company becoming public.

16.	SPACs offer an alternative to traditional IPOs.  Once launched by their sponsor or sponsors, SPACs typically raise money largely from public-equity investors.  SPACs can enable a privately held business to go public more quickly and with less risk than would be experienced in a traditional IPO.  Investing in a SPAC can provide investors the opportunity to potentially invest early in an emerging company at a favorable price and avoid the volatility of public markets.

17.	As a SPAC, CF III was formed for the sole purpose of effecting a merger with, or acquisition of, a target company to be identified at a later date.

3

18.  After completing its initial public offering in November 2020, CF III sought to acquire what was, at that time, the private company AEye, Inc. ("Target AEye"), a technology company that designs light detection and ranging ("LiDAR") systems that can be used for a variety of applications, including for self-driving cars (and which has since been acquired by and merged with CF III and taken public as set forth below).

19.  Target AEye was, and AEye presently is, a global leader in employing LiDAR technology for autonomous vehicles and other use cases.  AEye's signature product, the 4Sight$^{TM}$ Intelligent Sensing Platform, is a laser-based sensing system that combines adaptive LiDAR, an optionally fused camera, and artificial intelligence to provide a uniquely high standard of accuracy and speed for self-driving vehicles.

B.  **The Merger Plan and Agreement**

20.  On February 17, 2021, CF III entered into an agreement and plan of merger with its wholly-owned subsidiary Meliora Merger Sub, Inc. ("Meliora") and Target AEye (the "Merger Agreement").  Pursuant to the Merger Agreement, Target AEye and Meliora would, upon the satisfaction of certain conditions, merge and Target AEye would survive the merger as a wholly-owned subsidiary of CF III.

21.  Upon completion of the Merger, CF III planned to (and ultimately did) rename itself AEye, Inc.

22.  The Merger Agreement expressly contemplated that, on the same date as the execution of the Merger Agreement, CF III would secure share purchase commitments from Private Investment in Public Equity ("PIPE") investors sufficient to complete financing for the closing of the Merger.

### C. The Subscription Agreement

23. As contemplated, on the same day it entered into the Merger Agreement, CF III entered into subscription agreements with several PIPE investors (the "PIPE Subscription Agreements"). Through the PIPE Subscription Agreements, Plaintiff secured commitments for a total of $225 million in additional capital for the anticipated acquisition of Target AEye.

24. Specifically, pursuant to the PIPE Subscription Agreements: (i) CF III agreed to issue and sell an aggregate of 22,500,000 shares of its Class A common stock, and (ii) the PIPE investors agreed to purchase these shares at $10.00 per share at the time of the Merger.

25. One such commitment that CF III secured was the commitment from Defendant All Blue, a private fund which, upon information and belief, is affiliated with All Blue Capital, a global investment firm that invests in private equity, real estate, and blockchain.

26. On February 17, 2021, All Blue entered into the Subscription Agreement with CF III, pursuant to which All Blue agreed to purchase, and Plaintiff agreed to issue and sell 500,000 shares of its Class A common stock (the "Shares") at $10.00 per share for a total of $5,000,000.

27. As with the other PIPE Subscription Agreements, the closing of the sale of the Shares (the "Closing") was contingent upon, and was to occur concurrently with, the closing of the Merger.

28. The other conditions for Closing set forth in All Blue's Subscription Agreement, including the receipt of requisite stockholder approvals and the continued qualification of the Shares for offering, were identical to the conditions for closing set forth in all of the other PIPE Subscription Agreements.

29. Under the Subscription Agreement, at least seven business days before the anticipated date of the Closing, Plaintiff was required to deliver a written notice to All Blue

specifying the anticipated date of the Closing and the wire instructions for transferring the purchasing funds to Plaintiff ("Notice of Closing").

30.　　Thereafter, by no later than 4:00 PM (Eastern Time) the business day before the date of the Closing, All Blue was required to deliver $5,000,000 to Plaintiff by wire transfer. The funds would be held in escrow until the Closing, at which time the purchase funds were to be released to Plaintiff and the Shares delivered to All Blue.

31.　　In entering the Subscription Agreement and committing to purchase Shares of Plaintiff, All Blue explicitly acknowledged that Plaintiff would "rely on the acknowledgments, understandings, agreements, representations and warranties of [All Blue] contained in this Subscription Agreement."

32.　　In Section 10 of the Subscription Agreement, All Blue and Plaintiff expressly agreed that "irreparable damage may occur in the event that any of the provisions of [the] Subscription Agreement were not performed." Accordingly, All Blue and Plaintiff further agreed that "the parties shall be entitled to seek equitable relief, . . . to enforce specifically the terms and provisions of [the] Subscription Agreement" in addition to seeking "any other remedy . . . at law, in equity, in contract, in tort or otherwise."

**D. All Blue Breaches the Subscription Agreement by Failing to Provide the Purchasing Funds**

33.　　Plaintiff performed all of its obligations under the Subscription Agreement and satisfied all conditions obligating All Blue to consummate the Closing.

34.　　On August 5, 2021, Plaintiff's counsel sent to Daniel Cookson, the Director of All Blue, and to Matt Novak, the Managing Partner of All Blue, the Notice of Closing required by Section 2(b) of the Subscription Agreement.

35. The Notice of Closing informed All Blue that the anticipated date of the Closing and Merger was August 16, 2021. It provided the instructions for wiring the purchasing funds to CF III and instructed All Blue to deliver these funds by 4:00 PM (Eastern Time) on August 13, 2021, the business day before the anticipated date of the Closing.

36. One week later, on August 12, 2021, Plaintiff contacted All Blue again, reminding All Blue that its capital commitment of $5,000,000 was due on August 13, 2021 and attaching another copy of the August 5, 2021 Notice of Closing.

37. All conditions obligating All Blue to consummate the Closing were satisfied.

38. But in breach of Section 2(b) of the Subscription Agreement, All Blue failed to deliver the $5,000,000 purchasing funds to CF III on August 13, 2021, or at any time thereafter.

39. By August 13, 2021, every other PIPE investor who had entered a PIPE Subscription Agreement complied with their subscription agreements, delivering an aggregate of $220 million to Plaintiff. All Blue was the only PIPE investor that breached its contractual obligation.

40. On August 16, 2021, the parties to the Merger Agreement consummated the Merger. On that same day, Plaintiff changed its name from CF III to AEye, Inc. and sold and delivered 22 million Class A common stock to the other PIPE investors.

41. As evidenced by the successful closing of the sale of the 22 million shares to all of the PIPE investors other than All Blue, all of the conditions for closing of the purchase under the Subscription Agreement were satisfied.

### E. All Blue Fails to Remedy its Breach of the Subscription Agreement

42. On August 20, 2021, AEye notified Mr. Cookson and Mr. Novak that All Blue was in material breach of the Subscription Agreement. AEye attached another copy of the August 5, 2021 Notice of Closing.

43. On August 23, 2021, Mr. Cookson acknowledged receipt of the Notice of Closing and the notice of material breach, and responded to AEye, assuring it that All Blue "fully intend[ed]" to comply with the Subscription Agreement and expected to be "able to proceed in short order."

44. On August 26, 2021, Mr. Cookson again assured AEye that All Blue would be able to fulfill its commitment, this time promising it would do so "under one or two weeks at most."

45. But All Blue never fulfilled its commitment. After making repeated false promises that it would purchase the Shares, eventually All Blue conceded that it would not.

46. To date, All Blue has not delivered to AEye the $5,000,000 it committed to purchase the Shares and has provided no justifiable basis for failing to do so.

## CAUSE OF ACTION
## BREACH OF CONTRACT

47. Plaintiff repeats and incorporates each of the foregoing allegations as if fully set forth herein.

48. On February 17, 2021, Plaintiff and All Blue entered into the Subscription Agreement, a valid and binding contract.

49. Plaintiff performed its obligations under the Subscription Agreement by, among other things, (i) effectuating the Merger; (ii) obtaining all necessary stockholder and regulatory approvals; (iii) sending All Blue the Notice of Closing at least seven days before the anticipated

date of the Closing; (iv) making the Shares available for All Blue's purchase; and (iv) satisfying all other conditions in the Subscription Agreement obligating All Blue to consummate the Closing.

50. All Blue breached its obligations under the Subscription Agreement by, among other things, failing to: (i) provide its capital commitment of $5,000,000 by 4:00 PM the business day before the anticipated date of Closing or at any other time, and (ii) purchase the Shares that Plaintiff made available for sale.

51. Plaintiff has been damaged as a direct and proximate result of the breach of the Subscription Agreement by All Blue.

52. By reason of All Blue's contractual breach, Plaintiff is entitled to the remedy of damages in an amount to be determined at trial, but presently estimated to be no less than $5,000,000 plus interest.

53. It is within All Blue's power to perform its obligations under the Subscription Agreement.

54. By reason of All Blue's contractual breach, and as agreed by the parties in Section 10 of the Subscription Agreement, which provides *inter alia* that in the event of a breach of the Subscription Agreement "irreparable damage may occur," for which there is no adequate remedy at law, Plaintiff is entitled to the alternative remedy of specific performance in the form of an injunction requiring All Blue to finally consummate the Subscription Agreement and purchase 500,000 shares of Class A common stock in AEye for the purchase price of $5,000,000. Plaintiff is ready, willing, and able to perform its obligations under the Subscription Agreement and has fulfilled all of its duties to date.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For damages in an amount to be determined at trial, but presently estimated to be not less than $5,000,0000, plus interest, attorney's fees, and costs;

2. In the alternative to damages, judgment directing and compelling All Blue to specifically perform its obligations under the Subscription Agreement, including furnishing the $5,000,000 purchase price to Plaintiff in consideration for the Shares; and

3. For such other and further relief as the Court may deem just and proper.

Dated:  June 13, 2022
New York, New York

                          SHER TREMONTE LLP

                By:   */s/ Erica A. Wolff*
                        Erica A. Wolff
                        Kimo S. Peluso
                        Cathy Liu
                        90 Broad Street, 23rd Floor
                        New York, New York 10004
                        Tel: 212.202.2600
                        Email: EWolff@shertremonte.com

                        *Attorneys for Plaintiff AEye, Inc.*
                        *f/k/a CF Finance Acquisition Corp. III*