**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AEYE, INC.
f/k/a CF FINANCE ACQUISITION CORP. III,

          Plaintiff and
          Counterclaim-Defendant,

   v.

ALL BLUE FALCONS FZE,

          Defendant and
          Counterclaim-Plaintiff.

Case No. 1:22 Civ. 04964 (RA) (VF)

---

## DEFENDANT AND COUNTERCLAIM-PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO AEYE'S MOTION TO DISMISS AND MOTION TO STRIKE

OLSHAN FROME WOLOSKY LLP
*Attorneys for Defendant and Counterclaim-Plaintiff All Blue Falcons FZE*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

Table of Contents

Page

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND .....................................................................................................2

ARGUMENT ............................................................................................................................6

    I.     Legal Standard ...............................................................................................6

    II.    Falcons FZE's Counterclaim for Fraudulent Inducement States a Claim for
         Relief............................................................................................................7

         A.    Falcons FZE Asks the Court to Find the Subscription Agreement
             Null and Void.................................................................................7

         B.    The Statements Identified by Falcons FZE Support a Claim for
             Fraudulent Inducement ...................................................................8

             1.    The Pipeline Representations Were Misstatements of
                 Present Fact.......................................................................9

             2.    The Statements in the First Investor Presentation Are
                 Actionable .......................................................................10

             3.    The False Statements Are Pled with Particularity ........................13

    III.    Falcons FZE's Counterclaim for Breach of Contract States a Claim for
         Relief..........................................................................................................16

    IV.    Falcons FZE's Service of Process Defense Should Not Be Stricken ...................18

CONCLUSION.........................................................................................................21

<u>Table of Authorities</u>

<u>Page</u>

CASES

*Anderson v. British Overseas Airways Corp.*,
    144 F. Supp. 543 (S.D.N.Y. 1956) .................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...........................................................................6

*Bank of N.Y. v. First Millennium, Inc.*,
    607 F.3d 905 (2d Cir. 2010)..........................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................6

*Cannon v. Douglas Elliman, LLC.*,
    No. 06 Civ. 7092, 2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007)...........................9

*Cohen v. Koenig*,
    25 F.3d 1168 (2d Cir. 1994)......................................................................10, 11

*Cosmas v. Hassett*,
    886 F.2d 8 (2d Cir. 1989)........................................................................ 13-14

*CPC Int'l Inc. v. McKesson Corp.*,
    70 N.Y.2d 268 (1987) ...............................................................................12

*Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*,
    68 N.Y.2d 954 (N.Y. 1986) ........................................................................13

*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*,
    924 F. Supp. 449 (S.D.N.Y. 1996) ................................................................16

*Dornberger v. Met. Life Ins. Co.*,
    961 F. Supp. 506 (S.D.N.Y. 1997) ......................................................... 7-8, 13, 14

*E. 32nd St. Assocs. v. Jones Lang Wooten USA*,
    191 A.D.2d 68 (1st Dep't 1993) ...................................................................11

*E. Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*,
    No. 16 Civ. 6805, 2017 WL 6413993 (S.D.N.Y. Nov. 22, 2017) ...........................11

Table of Authorities
(continued)

Page

*Elkind v. Liggett & Myers, Inc.*,
    635 F.2d 156 (2d Cir. 1980)..................................................................................11

*Ely-Cruikshank Co. v. Bank of Montreal*,
    81 N.Y.2d 399 (1993) .........................................................................................17

*EMR (USA Holdings) Inc. v. Goldberg*,
    No. 18 Civ. 7849, 2020 WL 4038358 (S.D.N.Y. July 17, 2020) ...........................18

*Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*,
    225 F. Supp. 3d 18 (D.D.C. 2014) ......................................................................19

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*,
    189 F.R.D. 269 (S.D.N.Y. 1999) .........................................................................18

*Genetec, Inc. v. PROS, Inc.*,
    No. 20-CV-07959, 2021 WL 4311208 (S.D.N.Y. Sept. 21, 2021)..................14, 15

*GEOMC Co. v. Calmare Therapeutics Inc.*,
    918 F.3d 92 (2d Cir. 2019)..................................................................................18

*Gerszberg v. Iconix Brand Grp., Inc.*,
    No. 17 Civ. 8421, 2018 WL 2108239 (S.D.N.Y. May 7, 2018)................................9

*Gizzi v. Hall*,
    300 A.D.2d 879 (3d Dept. 2002) .........................................................................13

*Glidepath Holding B.V. v. Spherion Corp.*,
    No. 04 Civ. 9758, 2010 WL 1372553 (S.D.N.Y. Mar. 26, 2010),
    *aff'd*, 425 F. App'x 76 (2d Cir. 2011)...................................................................11

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985)..............................................................................11

*Goldstein v. Cogswell*,
    No. 85 Civ. 9256, 1991 WL 60420 (S.D.N.Y. Apr. 11, 1991)...............................13

*Golub Assocs., Inc. v. Lincolnshire Mgmt., Inc.*,
    1 A.D.3d 237 (1st Dep't 2003) ...........................................................................16

*Great W. Ins. Co. v. Graham*,
    No. 18 Civ. 6249, 2020 WL 3415026 (S.D.N.Y. June 22, 2020)...........................14

*Green v. Beer*,
    No. 06 Civ. 4156, 2009 WL 911015 (S.D.N.Y. Mar. 31, 2009) ..............................9

Table of Authorities
(continued)

Page

*Hertz Corp. v. Accenture LLP*,
  No. 19 Civ. 3508, 2019 WL 5537997 (S.D.N.Y. Oct. 25, 2019) ...........................................14

*In re Columbia Sec. Litig.*,
  747 F. Supp. 237 (S.D.N.Y. 1990) ........................................................................................9

*In re Gaming Lottery Sec. Litig.*,
  1998 WL 276177 (S.D.N.Y. May 29, 1998) ........................................................................12

*In re SkyPort Global Comm'cns*,
  528 B.R. 297 (S.D. Tex. 2015), *aff'd in part*, 642 F. App'x 301 (5th Cir. 2016)...................20

*In re WorldCom, Inc. Sec. Litig.*,
  294 F. Supp. 2d 392 (S.D.N.Y. 2003).....................................................................................8

*Korpak, Ltd. v. Williams Lea Inc.*,
  No. 20 Civ. 6880, 2022 WL 375543 (S.D.N.Y. Feb. 7, 2022) ................................................6

*Luce v. Edelstein*,
  802 F.2d 49 (2d Cir. 1986).............................................................................................15, 16

*Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*,
  23 F. Supp. 2d 439 (S.D.N.Y. 1998).......................................................................................6

*Mott v. Tri-Continental Fin. Corp.*,
  330 F.2d 468 (2d Cir. 1964)....................................................................................................8

*Omega Exec. Servs. v. Grant*,
  No. 78 Civ. 4616, 1980 WL 1432 (S.D.N.Y. Aug. 22, 1980) ................................................13

*Orientview Techs. LLC v. Seven For All Mankind, LLC*,
  No. 13 Civ. 0538, 2013 WL 4016302 (S.D.N.Y. Aug. 7, 2013) ............................................18

*Ouaknine v. MacFarlane*,
  897 F.2d 75 (2d Cir. 1990).....................................................................................................15

*Perico, Ltd. v. Ice Cream Indus., Inc.*,
  No. 87 Civ. 4211, 1990 WL 11539 (S.D.N.Y. Feb. 9, 1990) ................................................17

*Reiser Inc. v. Roberts Real Estate*,
  292 A.D.2d 726 (3d Dep't 2002) .............................................................................................9

*Reynolds v. Lifewatch, Inc.*,
  136 F. Supp. 3d 503 (S.D.N.Y. 2015)........................................................................14, 15, 16

Table of Authorities
(continued)

Page

*Russell Brands, LLC v. GVD Int'l. Trading, SA*,
    282 F.R.D. 21 (D. Mass. 2012)..................................................................................19

*Saeco Vending, S.P.A. v. Seaga Mfg., Inc.*,
    15 Civ. 3280, 2016 WL 1659132 (S.D.N.Y. Jan. 28, 2016)...................................17

*Sec. & Exch. Comm'n v. Ripple Labs, Inc.*,
    No. 20 Civ. 10832, 2022 WL 748150 (S.D.N.Y. Mar. 11, 2022) ....................18, 21

*SG Blocks, Inc. v. Osang Healthcare Co.*,
    21-CV-1990, 2022 WL 16787936 (E.D.N.Y. Sept. 22, 2022) ................................17

*Sokolow, Dunaud, Mercadier & Carreras LLP v. Lacher*,
    299 A.D.2d 64 (1st Dep't 2002) ..............................................................................7

*Solomon Cap., LLC v. Lion Biotech., Inc.*,
    171 A.D.3d 467 (1st Dep't 2019) .............................................................................9

*Sosland Publ'g Co. v. Mulholland*,
    No. 87 Civ. 8432 1988 WL 87335 (S.D.N.Y. Aug. 17, 1988) ...............................21

*Special Situations Fund III, L.P. v. Versus Tech., Inc.*,
    227 A.D.2d 321 (1st Dep't 1996) ...........................................................................16

*T&N PLC v. Fred S. James & Co.*,
    29 F.3d 57 (2d Cir. 1994)........................................................................................17

*Tardif v. City of New York*,
    302 F.R.D. 31 (S.D.N.Y. 2014) ..............................................................................18

*United States ex rel. Chorches v. Am. Med. Response, Inc.*,
    865 F.3d 71 (2d Cir. 2017)......................................................................................13

*United States ex rel. Heath v. AT&T, Inc.*,
    791 F.3d 112 (D.C. Cir. 2015) ................................................................................13

*Vereins–Und Westbank AG v. Carter*,
    639 F. Supp. 620 (S.D.N.Y. 1986) .........................................................................15

*William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*,
    744 F.2d 935 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986)....................18

*Yu v. Premiere Power LLC*,
    No. 14 Civ. 7588, 2015 WL 4629495 (S.D.N.Y. Aug. 4, 2015) ............................15

Table of Authorities
(continued)

Page

STATUTES

United Kingdom Civil Procedure Law § 6.8(a)......................................................... 19-20

OTHER AUTHORITIES

Federal Rule of Civil Procedure
    9(b)..........................................................................................................8, 13, 14, 15
    12..........................................................................................................................18

Restatement (Second) of Contracts
    § 225......................................................................................................................16
    § 237......................................................................................................................16

## PRELIMINARY STATEMENT

This case arises out of a deal struck in reliance on misleading statements made by a special purpose acquisition company ("SPAC") in search of easy financing to complete a merger. The SPAC, CF Finance Acquisition Corporation III ("CF III"), granted hundreds of thousands of shares to its sponsor, a wholly-owned subsidiary of Cantor Fitzgerald, L.P. ("Cantor") for less than a penny per share. If CF III could close a merger with a private target company within a limited period of time, it would not have to return the funds raised through its initial public offering to IPO stockholders, and it would make a guaranteed profit for its sponsor. CF III chose a private LiDAR technology company, Legacy AEye. In connection with that closing, it solicited from Defendant All Blue Falcons FZE ("Defendant," or "Falcons FZE") private funding in the form of a Private Investment for Public Equity ("PIPE") transaction.

Defendant subscribed to the PIPE transaction on the basis of statements made by CF III and its agent, sponsor, and controller Cantor, as to the business conditions and prospects of Legacy AEye and the combined company ("AEye" or "Plaintiff"). These included false statements regarding the composition and strength of the AEye's business "pipeline" and misrepresentations as to AEye's financial condition, including its near-term and long-term performance. AEye also breached the representations and warranties it made in the Subscription Agreement between the parties by filing misleading statements with the U.S. Securities and Exchange Commission that were later amended. That breach relieved Defendant of its obligation to perform under the contract.

Plaintiff seeks to dismiss Falcon FZE's fraud counterclaim by contending that its blatant misrepresentations are not actionable or are not specifically pleaded under the Federal Rules. It further incorrectly argues that the fraud counterclaim is duplicative of Defendant's breach of contract counterclaim (together with the fraud counterclaim, the "Counterclaims"), which Plaintiff

simultaneously argues must be dismissed.   Defendant's counterclaim alleging fraudulent inducement to enter the Subscription Agreement is legally distinct from the breach of contract counterclaim.  And, Plaintiff's own breach of the representations and warranties in that Agreement excuses Defendant's performance.  Plaintiff's remaining arguments about the breach of contract counterclaim merely concern the quantum of damages that Defendant can recover pursuant to that claim, which is not an appropriate issue to resolve at the pre-discovery pleadings stage.

Finally, this Court should reject Plaintiff's premature request for judgment on Defendant's affirmative defense of insufficient service of process, as questions of fact and law remain with respect to that defense, and Plaintiff has identified no prejudice it suffers from facing that defense.

For the foregoing reasons and as further set forth below, Defendant respectfully requests that the Court deny Plaintiff's motion in its entirety.

## FACTUAL BACKGROUND

### The Parties

Counterclaim-Plaintiff and Defendant All Blue Falcons FZE ("Falcons FZE") is a private company based and organized in Dubai, in the United Arab Emirates.  Counterclaims ¶ 6.

Counterclaim-Defendant and Plaintiff AEye, Inc. ("AEye") is a Delaware corporation headquartered in Dublin, California. Counterclaims ¶ 7. AEye was originally incorporated as a SPAC named CF Finance Acquisition Corp. III.  Counterclaims ¶ 11. At all times prior to the merger between CF III and its target, the private company Legacy AEye, CF III was sponsored, wholly-owned, and controlled by Cantor Fitzgerald, L.P. ("Cantor"), and Cantor's chief executive officer was Howard Lutnick, who served as the CEO of CF III.  Counterclaims ¶¶ 13-15.

CF III was created with the express purpose of taking a private company public through a reverse merger.  In late 2020 and early 2021, Cantor representatives reached out to representatives of Falcons FZE to solicit investment in a series of private investment in public equity ("PIPE")

2

transactions in connection with the de-SPAC mergers of certain Cantor's SPACs, one of which was CF III.

Starting on February 1, 2021, representatives of CF III—including Cantor on behalf of CF III—contacted Falcons FZE through phone calls and chat messages to solicit a PIPE investment in CF III.  Counterclaims ¶ 25.  On February 4, 2021, Mr. Batalion told Mr. Novak that legacy AEye had a full pipeline of advantageous contracts.  Counterclaims ¶ 27.  Mr. Batalion also represented that AEye's strong pipeline of deals would shortly be consummated, and promised that AEye's stock price would rise post-merger above the $10.00 per share stock price set for the PIPE investment.  *Id.*  On or around February 10, Mr. Kevin Brennan of Cantor touted the supposedly strong pipeline and assured Falcons FZE that the CF III-Legacy AEye merger would be successful based upon Legacy AEye's pipeline and future profits.  Counterclaims ¶ 28.

On behalf of CF III, its CEO, Mr. Lutnick, in the three weeks between February 1 and February 17, 2021, stated to representatives of Falcons FZE that Legacy AEye had a strong pipeline of advantageous contracts and that AEye would be a profitable investment for Falcons FZE because of this robust pipeline.  Counterclaims ¶ 29.

However, Cantor entirely owned and controlled CF III through its sponsor, which had purchased 5,710,000 sponsor shares in CF III for a mere $25,000, i.e., less than half a penny per share.  Counterclaims ¶ 61.  While CF III was selling itself to other investors at $10.00 per share, Cantor's sponsor shares meant it stood to reap huge profits, even if the post-combination trading price dipped far below $10.00 per share.  Counterclaims ¶ 57.  Even at a $1.16 post-combination stock price, Cantor would have made a nearly $6.6 million dollar profit.  Counterclaims ¶ 61.  Cantor's banking affiliate CF&Co. also made millions of dollars from the investment banking services it provided to CF III.  Counterclaims ¶¶ 22, 61.  Cantor used its control of CF III and

3

position as CF III's agent to misrepresent the investment and induce Falcons FZE to enter the Subscription Agreement via fraud.  Counterclaims ¶ 22-36.

CF III, and Cantor acting on behalf of CF III, misrepresented the facts regarding AEye's business condition, plans, and prospects to Falcons FZE.  Counterclaims ¶ 24.  Despite CF III's representations regarding AEye's robust business pipeline, that pipeline did not actually exist and never materialized.  Counterclaims ¶ 30, 59.  After the de-SPAC, AEye had only *one* customer for the majority of its revenue, and it has disclosed in its public filings that its customer relationships are "currently in development."  Counterclaims ¶ 59 & fn. 10.

Falcons FZE did not know that CF III's representations with respect to AEye's pipeline were false.  Counterclaims ¶ 30.  Falcons FZE also learned after entering the Subscription Agreement that other material information provided by the Company on which Falcons FZE relied was wrong.

CF III provided Falcons FZE with access to a dataroom containing Legacy AEye's financial information, projections, and an investor presentation, and coordinated a conference call with Legacy AEye representatives.  Counterclaims ¶ 31.  In reliance on the accuracy and truthfulness of the information received regarding AEye's business pipeline and expected future performance, Falcons FZE executed the Subscription Agreement. That information was filed with the SEC on February 17, 2021, and the public filings show that CF III represented that the pro forma enterprise valuations of AEye ranged from $3.6 billion to $7.6 billion—and that the $2.0 billion transaction value was at a discount of 63% to the midpoint of the implied value of the Company of approximately $5.4 billion.  Counterclaims ¶ 33.  The information further stated that CF III projected $4 million in revenues in FY2021 and that it would turn a net profit that year of $1 million.  Counterclaims ¶ 44.

But, on May 3, 2021, CF III amended its filings and lowered the transaction value of the Company to $1.5 billion. Counterclaims ¶ 42. CF III also released an updated investor presentation, which lowered the revenue, EBITDA, and gross profit projections for the Company. Counterclaims ¶ 43. The revised figures decreased FY 2021 revenue by 25 percent, to $3 million, and lowered the Company's gross profits from $1 million to zero. Counterclaims ¶ 44. In fact, AEye booked a gross loss of $630,000 that year. *Id.*

On July 19, 2021, Legacy AEye's CFO Robert Brown revealed CF III's misrepresentations and acknowledged that the investor presentation did not accurately reflect the Company's internal growth expectations, instead presenting growth that Legacy AEye had not previously experienced. *Id.* The revenue projections of $605 million for FY 2026 was orders of magnitude greater than the adjusted $3 million estimate for FY 2021—which itself was more than Legacy AEye had ever made. *Id.* After executing the Subscription Agreement, Falcons FZE also learned that the Company's billion-dollar valuation range was not based on projections derived from the standard process that Legacy AEye used for its projections and valuations. On information and belief, these projections been manufactured for the sole purpose of inducing investment in connection with Legacy AEye's merger (i.e., its de-SPAC transaction) with CF III and was not a true and accurate report of CF III's own view of valuation. Counterclaim ¶ 63.

Between entering the Subscription Agreement in February 2021 and the transaction's closing on August 16, 2021, Falcons FZE realized that AEye's business condition and prospects had not been accurately represented to them. AEye also breached certain conditions to closing in the Subscriber Agreement, including by restating its financial statements and breaching the condition that none of SEC filings, when filed, contained any untrue statement of a material fact. Counterclaims ¶¶ 40, 42. Falcons FZE did not tender payment for the PIPE offering at the closing.

As of Falcons FZE's Answer, AEye's average stock price was $1.16, and its market capitalization is under $190 million.   Counterclaim ¶ 58. Now AEye has brought this lawsuit attempting to extract $5 million from Falcons FZE.

## ARGUMENT

## I.    Legal Standard

A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, accepted as true, "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint need not provide "detailed factual allegations," but the facts pled "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  In moving to dismiss, the Court must assume the facts as pleaded in the counterclaims to be true; Plaintiff cannot prevail on its arguments as to what the facts will show at trial.  *Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 445 (S.D.N.Y. 1998); *Korpak, Ltd. v. Williams Lea Inc.*, No. 20 Civ. 6880, 2022 WL 375543, at *3 (S.D.N.Y. Feb. 7, 2022).  Under these standards, Falcons FZE's counterclaims state a claim to relief, and AEye's motion to dismiss must be denied.

II.     **Falcons FZE's Counterclaim for Fraudulent Inducement States a Claim for Relief**

AEye contends Falcons FZE's counterclaim for fraudulent inducement fails to state a claim because it does not allege monetary damages and is not based upon actionable misrepresentations. Br. at 13-14.  AEye does not dispute the sufficiency of Falcons FZE's allegations as to scienter or justifiable reliance, which Falcons FZE has amply alleged.  *See* Counterclaims ¶¶ 20-23, 35, 61. AEye's contentions lack merit, because (i) this Court may rescind the Subscription Agreement based upon AEye's fraudulent inducement, and (ii) because Falcons FZE has pled actionable fraudulent statements with particularity.   AEye also mistakenly argues that Falcons FZE's fraudulent inducement counterclaim is duplicative of the breach of contract claim to the extent it is based upon misrepresentations made in the investor presentation.  But these two counterclaims seek different relief based upon different wrongful conduct: misrepresentation that induced Falcons FZE to execute the Subscription Agreement vs. AEye's subsequent breach of its representations and warranties.

A.     **Falcons FZE Asks the Court to Find the Subscription Agreement Null and Void**

Falcons FZE plainly pleaded that "[b]y reason of Plaintiff's misrepresentations, the Subscription Agreement is unenforceable and void ab initio."  Counterclaims ¶ 85.  While the elements of fraudulent inducement are "a knowing misrepresentation of material fact, which is intended to deceive another party and to induce them to act upon it, causing injury," *Sokolow, Dunaud, Mercadier & Carreras LLP v. Lacher*, 299 A.D.2d 64, 70 (1st Dep't 2002), "a substantial body of case law indicates that an action to rescind a contract for fraudulent inducement does not require a showing of injury in the traditional sense which is required in an action for damages." *Dornberger v. Met. Life Ins. Co.*, 961 F. Supp. 506, 543 (S.D.N.Y. 1997).  Instead, the plaintiff need only show that it "received something different from what she contracted for and that she

might not have accepted the same had the facts not been misrepresented to her." *Id.* at 544; *see also Mott v. Tri-Continental Fin. Corp.*, 330 F.2d 468, 470 (2d Cir. 1964) (injury is sufficient in a fraud claim where plaintiff "received something other than that for which he bargained").

Here, Falcons FZE alleged that it received "something different" than what it contracted for, which it would not have accepted had the facts not been misrepresented. Counterclaims ¶¶ 35, 52, 57-62. There was no pipeline, and the Company's projections were inaccurate. Falcons FZE counterclaimed against AEye properly seeking to have a contract induced by fraud be treated as void ab initio, and AEye cannot credibly take the position that Falcons FZE's counterclaims do not provide notice of the relief sought and facts upon which that request for relief is based.[1]

## B.   The Statements Identified by Falcons FZE Support a Claim for Fraudulent Inducement

AEye erroneously contends that the statements comprising the fraudulent misrepresentations are not actionable, or not pled with particularity. AEye Br. at 15. The statements regarding AEye's pipeline were misstatements of present fact and were pled with particularity under Rule 9(b). Statements of future expectations are actionable where, as here, they are concrete, and where the facts alleged support an inference that the statements could not be true, or if opinions, were not truly held when made. Any one of these misrepresentations, standing alone, is sufficient to support a claim of fraudulent inducement.

---

[1] Although Falcons FZE asserts it is unnecessary, to the extent the Court requires, Falcons FZE should be permitted to amend its pleading to make the request for rescission explicit. *Cf. In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 423-24 (S.D.N.Y. 2003) ("plaintiffs have already signaled to the Underwriter Defendants [by their pleading] their claim for the relief to which that provision of the securities laws entitles them. The plaintiffs may amend their pleading to make their . . . demand for rescission explicit.").

8

1. **The Pipeline Representations Were Misstatements of Present Fact**

AEye's false representations regarding its pipeline was not mere "puffery." Both CF III itself through its CEO Lutnick, as well as through its agents[2] at Cantor, represented that AEye had a full pipeline of contracts, which in fact did not exist. Counterclaims ¶¶ 27, 29. These are allegations of present "concrete factual representations that go beyond mere puffery." *See Solomon Cap., LLC v. Lion Biotech., Inc.*, 171 A.D.3d 467, 468 (1st Dep't 2019) (Plaintiff's statement that he had investors "lined up and ready to go" when in fact he had none was concrete enough to support fraudulent inducement counterclaims); *Gerszberg v. Iconix Brand Grp., Inc.*, 17-cv-8421, 2018 WL 2108239, at *6 (S.D.N.Y. May 7, 2018) (plaintiffs sufficiently alleged defendants misrepresented facts at the time of signing); *Reiser Inc. v. Roberts Real Estate*, 292 A.D.2d 726, 728 (3d Dep't 2002) ("alleged misrepresentation of a present fact" alleged to induce entry into an agreement "is sufficient to raise a question of fact" precluding summary judgment). The existence of this "pipeline," and whether or not the contracts would "soon be consummated" were facts knowable at the time of signing. *Solomon Cap.*, 171 A.D.3d at 468. Falcons FZE later

---

[2] AEye attempts to distance itself from that acts of its agents, in particular Messrs. Batalion and Brennan who contacted Falcons FZE to market the PIPE transaction with CF III. The Counterclaims make clear allegations of agency and provide supporting facts: that Mr. Batalion and Mr. Brennan solicited investment in the PIPE transaction on behalf of CF III; that they worked for Cantor—CF III's parent company; that CF&Co. provided services to CF III; and that Cantor controlled CF III. CF III's public filings also state that CF&Co. worked as the Company's placement agent for the PIPE Transaction.

These facts demonstrate an agency relationship between Cantor and CF III; Batalion and Brennan's statements, made in the course of their employment and to benefit CF III by soliciting a PIPE investment from Defendant, are those for which CF III/AEye should be liable. *See in re Columbia Sec. Litig.*, 747 F. Supp. 237, 244 (S.D.N.Y. 1990) (finding complaint that expressly alleges agency relationship as well as several other facts supporting the inference of agency relationship.). In both cases cited by AEye, Br. at 17 n.6, no facts were alleged from which inferences of actual or apparent authority could be made. *See Green v. Beer*, No. 06 Civ. 4156, 2009 WL 911015, at *11 (S.D.N.Y. Mar. 31, 2009); *Cannon v. Douglas Elliman, LLC.*, No. 06 Civ. 7092, 2007 WL 4358456 at *5 (S.D.N.Y. Dec. 10, 2007). By contrast, facts supporting a formal agency relationship were alleged here.

learned there was only one single significant contract.  AEye cannot avoid the consequences of its false representations by suggesting that they were akin to a mere salesman's pitch.

AEye's misrepresentations about the company's performance are also actionable.  In fact, "a relatively concrete representation as to a company's future performance, if made at a time when the speaker knows that the represented level of performance cannot be achieved, may ground a claim of fraud." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994).  In *Cohen*, the plaintiffs successfully pled a claim for fraudulent inducement where they had alleged that the defendants, thirty days before the end of the fiscal year, had made representations about the Company's performance that the defendants knew could not have been achieved. Similarly, Falcons FZE has pled that at the time CF III made the statements regarding AEye's pipeline, growth, and profitability, they were false, which is supported by the fact that AEye later reported only one major customer that fiscal year and further indicated that other customer relationships were in development.  Counterclaims ¶¶ 27-30, 59 and fn.10.  By doing so, Falcons FZE has sufficiently pled material misrepresentations of present fact.

### 2. The Statements in the First Investor Presentation Are Actionable

AEye also claims that the statements in the First Investor Presentation, regarding AEye's near-term and long-term performance as well as statements regarding AEye's valuation, are not actionable because they constitute forward-looking statements and opinion.

However, as previously discussed, "a relatively concrete representation as to a company's future performance, if made at a time when the speaker knows that the represented level of performance cannot be achieved, may ground a claim of fraud." *Cohen*, 25 F.3d at 1172. The plaintiffs in *Cohen* alleged that "less than 30 days before the end of the 1989 fiscal year, the Koenigs represented that the Koenig Group's 1989 net income would significantly exceed $1,035,139, but in fact the 1989 net income was only $107,251. Though technically these

statements concerned 'future' performance, . . . they [could] nonetheless be actionable," because they were made "sufficiently close to the end of [the fiscal] year that plaintiffs could well prove that the Koenigs knew the represented level of performance ... could not be achieved." *Id.*; *Glidepath Holding B.V. v. Spherion Corp.*, No. 04 Civ. 9758, 2010 WL 1372553, at *7 (S.D.N.Y. Mar. 26, 2010), *aff'd*, 425 F. App'x 76 (2d Cir. 2011).

Similarly, the First Investor Presentation represented that AEye was projected to turn a net profit as of February 2021 and revenues of $4 million in FY 2021.  Merely two months later, those figures had been revised to *zero* net profits and revenues of $3 million—a 25% reduction.  In other words, having promised investors a near-term profitable company in order to obtain signatures on the Subscription Agreement, AEye then revised projections after PIPE investors had committed to reveal that the Company was not in fact projected to make a profit.  Thus, even though these statements concern future performance, the circumstances merit an inference that the "level of performance" represented were not accurate at the time the representation was made.  *Cohen*, 25 F.3d at 1172; s*ee Goldman v. Belden*, 754 F.2d 1059, 1069 (2d Cir. 1985) ("Liability may follow where management intentionally fosters a mistaken belief concerning a material fact, such as its evaluation of the company's progress and earnings prospects in the current year.") (*quoting Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir. 1980)).

Furthermore, while "fraud cannot be based on speculative statements or expressions of hope concerning a future event, financial projections made with the knowledge that they were false and unreasonable may be the basis for an allegation of common-law fraud." *E. Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*, No. 16 Civ. 6805, 2017 WL 6413993, at *4 (S.D.N.Y. Nov. 22, 2017) (quoting *E. 32nd St. Assocs. v. Jones Lang Wooten USA*, 191 A.D.2d 68, 68 (1st Dep't 1993)).  In *Shaoxing*, the Southern District denied a motion for judgment on the pleadings

11

and motion for summary judgment based on part on a "vast disparity" between the projected future sales projection of $16.7 million over fifteen months provided to the plaintiff, and the actual revenues of just over $300,000 for that same time, rejecting the argument that the projection was not actionable as an expression of future expectations. *See also CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 286 (1987) ("projections of … expected financial performance [can] constitute 'material existing fact[s], sufficient to support a fraud action.'"); *In re Gaming Lottery Sec. Litig.*, 1998 WL 276177, at *6 (S.D.N.Y. May 29, 1998) ("Unreasonable growth projections are … actionable if they can be inferred to be known to be false or made recklessly.").

The Counterclaims amply allege that the First Investor Presentation presented financial projections that were unreasonable and not believed by CF III, who knew the true facts. The First Investor Presentation projected revenue and profit figures for FY 2021 that were lowered a mere two months after they were initially disclosed. The Counterclaims also detailed further facts supporting that the projections were unreasonable and false when made. For example, after Falcons FZE signed the Subscription Agreement, Legacy AEye's CFO disclosed that the projections reflected a "major growth curve," and the projections were fundamentally unlike any projections that Legacy AEye had previously made. Counterclaims ¶ 63. Such false projections can support a claim of fraud when these statements were not truly held when made.[3] These allegations suffice to support a claim for fraudulent inducement.

Additionally, AEye's motion should be denied to the extent it argues that the fraudulent inducement counterclaim is duplicative of the breach of contract claim. AEye Br. at 22-23. First,

---

[3] While valuations, like the $3-7 billion valuation stated in the First Investor Presentation, are often considered statements of opinion, here they are actionable fraud because they rely on unreasonable and false projections based on a methodology that AEye itself later indicated it did not use for its own projections. As such, the valuations were not truly held opinions by the proponents of the valuation.

by focusing solely on the First Investor Presentation, AEye ignores the other misrepresentations it made upon which the fraudulent inducement counterclaim is based, precluding dismissal under AEye's theory.  *See Dornberger*, 961 F. Supp. at 542 ("a fraudulent inducement claim is not redundant of a contract claim where the fraudulent inducement involves misrepresentations of present facts which are collateral to the contract"); *Gizzi v. Hall*, 300 A.D.2d 879, 880 (3d Dept. 2002). Second, the remedy sought by the two counterclaims is not the same—one seeks rescission and the other damages.  *See Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (N.Y. 1986) (approving separate damages awards for breach of contract and for fraudulent inducement).  At this stage of the litigation, Falcons FZE is allowed to plead in the alternative, and it needs not make an election of remedies. *See Goldstein v. Cogswell*, No. 85 Civ. 9256, 1991 WL 60420, at *17 (S.D.N.Y. Apr. 11, 1991); *Omega Exec. Servs. v. Grant*, No. 78 Civ. 4616, 1980 WL 1432, at *2-4 (S.D.N.Y. Aug. 22, 1980) (noting that under Fed. R. Civ. P. 8(e), "a party may not be precluded from pleading and seeking to prove at trial alternative legal theories despite the inconsistency of these theories" and that an election is to be made after trial).

### 3.    The False Statements Are Pled with Particularity

Falcons FZE pleaded the fraudulent statements that CF III and its agent Cantor made are pled with sufficient particularity. "[T]he point of Rule 9(b) is to ensure that there is sufficient substance to the allegations to both afford the defendant the opportunity to prepare a response and to warrant further judicial process." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 87 (2d Cir. 2017) (quoting *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 125 (D.C. Cir. 2015)).  Thus, pleadings must "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).  However, "[w]hether a

complaint complies with . . . Rule 9(b) . . . depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties[,] and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 522 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Hertz Corp. v. Accenture LLP*, No. 19-CV-3508, 2019 WL 5537997, at *3 (S.D.N.Y. Oct. 25, 2019).

In *Dornberger*, plaintiff's allegations met the Rule 9(b) standard, despite the fact she did not identify "the specific time, place, and speaker of every false statement made," because the allegations as they existed sufficed to give defendants "adequate notice of why they are being sued." *Dornberger*, 961 F. Supp. at 528. Similarly, Falcons FZE has sufficiently alleged "who" and "where" with particularity. The speaker of each statement, including the statements regarding AEye's pipeline, are identified with particularity as Mr. Batalion, Mr. Brennan, and Mr. Lutnick. Counterclaims ¶¶ 27-29. *Genetec, Inc. v. PROS, Inc.*, No. 20-CV-07959, 2021 WL 4311208, at *4 (S.D.N.Y. Sept. 21, 2021) (finding verbal misrepresentations made on behalf of defendant sufficiently particularized where the speaker and dates were alleged). These conversations were sufficiently alleged to have occurred over phone calls and chat messages. Counterclaims at ¶ 25. *See Great W. Ins. Co. v. Graham*, No. 18-CV-6249, 2020 WL 3415026, at *9 (S.D.N.Y. June 22, 2020) (finding the where and when of the fraudulent statements can be properly inferred despite lack of alleged link between each false statement and the specific meetings and calls during which they were made).

Falcons FZE has also alleged "when" with sufficient particularity. Here, the alleged false statements were alleged to have been made over a period of three weeks—from early February 2021 through the signing of the agreement. Counterclaims at ¶¶ 25-31, 36. This Court has

accepted that a "one-month time frame" over which false statements were allegedly made is "sufficiently specific for Rule 9(b) purposes." *Reynolds*, 136 F. Supp. 3d at 523 (also noting that Plaintiff need not plead his exact location at the time he heard the false statements); *see also Vereins–Und Westbank AG v. Carter*, 639 F. Supp. 620, 623 (S.D.N.Y. 1986) (finding a two-month period to be sufficiently particular under Rule 9(b)).

Furthermore, Falcons FZE's allegations of misrepresentations of specific facts stated in corporate documents suffice for Rule 9(b) purposes, even absent further details. *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986) (noting that no specific connection between fraudulent representations in the offering memorandum and particular defendants is necessary where defendants are insiders or affiliates participating in the offering in question); *Yu v. Premiere Power LLC*, No. 14 Civ. 7588, 2015 WL 4629495, at *10 (S.D.N.Y. Aug. 4, 2015) (noting that allegations that the preliminary investment memorandum contained false and fraudulent information designed to induce investment, on which plaintiffs actually did rely, satisfied Rule 9(b)) (citing *Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990)).  This court has found, for example, that fraud was stated with particularity where the complaint alleged that a slide deck from defendant stated that it had numerous satisfied customers, where at the time it had only had *one* customer that had used the software. *Genetec*, 2021 WL 4311208, at *3.  Similarly, Falcons FZE relied on representations as to the purportedly robust pipeline and information that CF III provided in its dataroom, which made misleading representations regarding the Company's business conditions and prospects. Counterclaims ¶ 31-35.

In sum, Falcons FZE has presented adequate allegations that give AEye sufficient notice of the circumstances underlying its counterclaim such that it can respond and prepare an adequate

defense, as required by Rule 9(b), *see Reynolds*, 136 F. Supp. 3d at 524, and the fraudulent inducement counterclaim should not be dismissed.[4]

## III.   Falcons FZE's Counterclaim for Breach of Contract States a Claim for Relief

AEye argues that Falcons FZE's breach of contract counterclaim should be dismissed, alleging failure to plead performance and damages in connection with the breach.  Opening Br. at 11-12.  But the law does not require Falcons FZE to plead performance in the face of AEye's breaches.  "[A] party will be relieved or discharged from the performance of futile acts . . . including the tender of payment, upon the failure . . . by [the other] party to honor its obligations under their contract."  *Special Situations Fund III, L.P. v. Versus Tech., Inc.*, 227 A.D.2d 321, 321 (1st Dep't 1996) (finding that plaintiff was relieved of any duty to tender payment under warrant agreement because defendant materially breached the agreement); *see also* Restatement (Second) of Contracts § 225, 237.  A "party will be discharged from the further performance of its obligations under the contract when the breach "goes 'to the root of the contract.'" *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 483 (S.D.N.Y. 1996).  AEye failed to meet its contractual obligations to provide truthful and accurate public disclosures in breach of the Subscription Agreement, which excused Falcons FZE from further performance.

AEye breached its February 17, 2021, representations and warranties by failing to make truthful public disclosures regarding the financial condition of AEye, and subsequently restating those disclosures.  Counterclaims at ¶¶ 41-49, 64.  *See, e.g.*, *Golub Assocs., Inc. v. Lincolnshire Mgmt., Inc.*, 1 A.D.3d 237, 238 (1st Dep't 2003) (noting that Defendant's submissions clearly establish that plaintiff "failed to conform to the unambiguous terms of the agreement in material

---

[4] To the extent the court disagrees that the allegations have been made with sufficient specificity, Falcons FZE respectfully asks for leave to amend.  *See Luce*, 802 F.2d at 56 (noting that complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend).

respects," and therefore defendants were relieved of their obligation to perform under the contract). While Plaintiff's argument focuses on the First Investor Presentation, the Counterclaims alleged AEye breached its representations and warranties because the financial statements as of February 17, 2021, needed to be restated in May 2021. Counterclaims ¶¶ 44-49. AEye's opening papers present no argument against the restatement of the financial statements as sustaining a breach of contract claim.

Further, Falcons FZE has alleged damages sufficiently at the pleading stage. Falcons FZE acknowledges that it did not suffer traditional "expectation" damages; however, nominal damages are always available for breach of contract. *Saeco Vending, S.P.A. v. Seaga Mfg., Inc.*, 2016 WL 1659132, at *7 (S.D.N.Y. Jan. 28, 2016); *T&N PLC v. Fred S. James & Co.*, 29 F.3d 57, 60 (2d Cir. 1994); *SG Blocks, Inc. v. Osang Healthcare Co.*, 21-CV-1990, 2022 WL 16787936, at *5 (E.D.N.Y. Sept. 22, 2022). The New York Court of Appeals has held that because "nominal damages are always available in breach of contract actions," a plaintiff may bring a breach of contract case even when no actual damages have yet accrued. *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993). Further, Falcons FZE has alleged foreseeable consequential damages flowing from Plaintiff's breach. Counterclaims ¶ 77 ("Defendant has suffered damages as a result of Plaintiff's breach that were foreseeable at the time of contracting in an amount to be proven at trial."); *see Perico, Ltd. v. Ice Cream Indus., Inc.*, No. 87 Civ. 4211, 1990 WL 11539, at *3 (S.D.N.Y. Feb. 9, 1990) ("Damages can also include "ordinary professional fees incurred as a result of the business transaction at issue in this case.").

Falcons FZE does not have the burden to plead that its counterclaim creates diversity jurisdiction, and AEye's arguments asserting the lack of damages suffered by Falcons FZE must wait until summary judgment or trial. At the pleading stage, even a conclusory allegation of

damages is sufficient to overcome a motion to dismiss a claim for breach of contract. *See, e.g.*, *EMR (USA Holdings) Inc. v. Goldberg*, No. 18 CIV. 7849, 2020 WL 4038358, at *10 (S.D.N.Y. July 17, 2020).

## IV.   Falcons FZE's Service of Process Defense Should Not Be Stricken

AEye has not presented this Court with any basis to strike one of Falcons FZE's affirmative defenses at this early stage of the case.  Motions to strike for legal insufficiency are disfavored in the Second Circuit. *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986). "In ruling on such a motion, courts 'deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike.'" *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20 Civ. 10832, 2022 WL 748150, at *3 (S.D.N.Y. Mar. 11, 2022).  "Unless the pleading is obviously insufficient as a matter of law, or the severity of the prejudice outweighs the materiality of the allegation, it will not be stricken." *Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13 Civ. 0538, 2013 WL 4016302, at *3 (S.D.N.Y. Aug. 7, 2013).  AEye fails to show the defense is "obviously legally insufficient," and it identifies no prejudice.  Instead, it seeks improper premature adjudication of Falcons FZE's affirmative defense of improper service of process, which Falcons FZE was required to plead under Rule 12.

Plaintiff must meet a demanding standard to prevail on a motion to strike an affirmative defense. *Tardif v. City of New York*, 302 F.R.D. 31, 31–32 (S.D.N.Y. 2014).  Specifically, it must "show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *Ripple Labs*, 2022 WL 748150, at *3; *see also GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019); *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 271-72 (S.D.N.Y. 1999).  AEye fails to meet all three prerequisites.

First, AEye cannot deny that issues of fact exist with respect to Falcons FZE's affirmative defense.  These include that Falcons FZE has never been registered or incorporated in the U.K., as it is a Dubai company, registered and based in Dubai; (2) that a related entity, All Blue Capital Ltd., was formerly a UK-registered company, but Companies House records show that it was dissolved in April 2021, long before the purported service in 2022; and (3) most importantly, that at the time of service Defendant was not at the 21 Hill Street, Mayfair, London, United Kingdom, W1J 5LP (the "Mayfair Address"), used for the purported service.  Even if All Blue Capital, Ltd. had existed in the U.K. at that Mayfair Address at the time of service, under traditional principles of corporate separation, service on a parent does not equate to service on its subsidiary. *See, e.g.*, *Anderson v. British Overseas Airways Corp.*, 144 F. Supp. 543, 545 (S.D.N.Y. 1956).  To be proper, service needed to be made on Falcons FZE in Dubai.

Second, issues of law remain as to whether service under the Hague Convention was proper at the Mayfair Address simply because it was the address to be used for notice provided in the Subscription Agreement.  AEye Br. at 24.  AEye's argument ignores that contractual notice provisions do not, absent clear, explicit language regarding legal service or consent to service of process, govern legal notice in the form of process of a complaint. *Russell Brands, LLC v. GVD Int'l. Trading, SA*, 282 F.R.D. 21, 23-24 (D. Mass. 2012); *see also Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*, 225 F. Supp. 3d 18, 23 (D.D.C. 2014) (notice provision for communications given "hereunder" does not comprise notice for legal service of process).  The notice provision in the Subscription Agreement governed notice under the contract; it did not expressly consent to or reference legal service of process, and therefore does not govern legal service.  *See* Subscription Agreement at § 10(*l*), Exhibit 1 to the Declaration of J. Ma.  Falcons FZE never gave an address "for the purpose of being served with proceedings" under the United

Kingdom's Civil Procedure Law applying to service of process in England and Wales.  *See* U.K. CPL § 6.8(a).  Service to the Mayfair Address was therefore invalid under local law and the Hague Convention.

Third, AEye attempts to convert its surprising success in obtaining a certificate from the U.K. Central Authority into a conclusive fact-finding on service.  At best, that certificate is only prima facie evidence of service, and Falcons FZE is entitled to rebut such evidence.  Further, contrary to Plaintiff's argument, federal courts have not uniformly accepted completed certificates from the Central Authority without any examination as to whether service actually complied with the Hague Convention and local law where service was purportedly made.  At least one court has rejected service through the Central Authority where such service did not comport with the local law and therefore failed to comply with the Hague Convention.  *See In re SkyPort Global Comm'cns*, 528 B.R. 297, 316 (S.D. Tex. 2015) (affirming bankruptcy court's rejection of a completed certificate from the Canadian Central Authority where the service was made on a receptionist at the address rather than management or a partner), *aff'd in part*, 642 F. App'x 301 (5th Cir. 2016).  Here, the London process server merely left the service papers with an unaffiliated company at the Mayfair Address, not with anyone at Falcons FZE.  ECF No. 9-1, Witness Statement of Paul Cottee, at ¶ 6.  Leaving service papers at a location that was never designated for the "purpose of being served with proceedings" does not comport with the U.K. Civil Procedure Law.  AEye may make seek a later adjudication of whether it has met its burden to show that service was proper under the Hague Convention, but its motion to strike is premature and improper.

Finally, AEye never contends that this affirmative defense works any prejudice on AEye.  "[I]n considering the third factor [i.e., prejudice], courts generally look to when the defense was presented. A factually sufficient and legally valid defense should always be allowed if timely filed

. . . because 'a defendant with such a defense is entitled to a full opportunity to assert it and have it adjudicated before a plaintiff may impose liability." *Ripple Labs*, 2022 WL 748150, at *4.  Here, Falcons' affirmative defense of improper service was timely asserted.  AEye faces no prejudice based on this defense, and the Court should deny its motion, at least at this early stage of the litigation.  *See Sosland Publ'g Co. v. Mulholland*, No. 87 Civ. 8432, 1988 WL 87335, at *2 (S.D.N.Y. Aug. 17, 1988) (refusing to strike defense of insufficiency of service). AEye's motion is at best premature; it will have its opportunity to argue the facts on summary judgment or at trial.

## CONCLUSION

For the foregoing reasons, Falcons FZE respectfully requests that the Court deny Plaintiff's motion to dismiss Defendant's counterclaims and its motion to strike.

Dated: New York, New York
December 6, 2022

OLSHAN FROME WOLOSKY LLP

By:   /s/ *Jeremy M. King*
Jeremy M. King
Jacqueline Y. Ma
*Attorneys for Defendant/Counterclaim*
*Plaintiff, All Blue Falcons FZE*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300