UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AEYE, INC.<br>f/k/a CF FINANCE ACQUISITION CORP. III,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ALL BLUE FALCONS FZE,<br><br>　　　　　　　　Defendant.<br><br>ALL BLUE FALCONS FZE,<br><br>　　　　　　　　Counterclaim Plaintiff,<br><br>　　v.<br><br>AEYE, INC.<br>f/k/a CF FINANCE ACQUISITION CORP. III,<br><br>　　　　　　　　Counterclaim Defendant. | Case No. 1:22 Civ. 04964 (RA) (VF)<br><br>**JOINT ELECTRONIC DISCOVERY SUBMISSION AND [PROPOSED] ORDER** |

　　　　One or more of the parties to this litigation have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests.  This Joint Submission and Proposed Order (and any subsequent to this) shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action.  The parties and the Court recognize that this Joint Submission and Proposed Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the parties.

11937279-2

**(1)     Brief Joint Statement Describing the Action**:

This case arises out of a dispute concerning a subscription agreement dated February 17, 2021 (the "Subscription Agreement"). On February 17, 2021, CF Acquisition Corp. III ("CF III," now known as AEye), entered into subscription agreements with several investors, including Falcons FZE, to provide working capital as part of an anticipated merger with AEye, Inc. ("Target AEye"). Pursuant to the Subscription Agreement with Falcons FZE, CF III agreed to issue and sell 500,000 shares of its Class A stock, and Falcons FZE agreed to purchase these shares at $10.00 per share for a total of $5,000,000 upon the completion of the anticipated merger.

On August 16, 2021, the merger was completed and CF III made 500,000 Class A shares available for Falcons FZE's purchase. Plaintiff / Counterclaim Defendant AEye, Inc. alleges that all conditions for closing were satisfied, but Falcons FZE breached the Subscription Agreement by failing to deliver $5,000,000 to AEye on the preceding business day (as required under the contract) or on any date thereafter and failing to purchase the subject shares. Falcons FZE alleges that its performance was excused because its execution of the Subscription Agreement was induced by certain alleged misrepresentations and because certain conditions to closing were not satisfied.

AEye asserts a count for breach of contract, seeking at least $5,000,000 in damages, or in the alternative, a judgment directing Falcons FZE to specifically perform its obligations under the Subscription Agreement. Falcons FZE asserts counterclaims for declaratory judgment, breach of contract, and fraudulent inducement, seeking, among other things, a declaration that Plaintiff cannot enforce the Subscription Agreement.

  (a)     **Estimated amount of Plaintiff(s)' Claim(s):**

   __ Less than $100,000
   __ Between $100,000 and $999,999
    **X** Between $1,000,000 and $49,999,999
   __ More than $50,000,000
   __ Equitable Relief
   __ Other (if so, specify) _____

  (b)     **Estimated amount of Defendant(s)' Counterclaim(s)/Cross-Claim(s):**

    **X** Less than $100,000
   __ Between $100,000 and $999,999
   __ Between $1,000,000 and $49,999,999
   __ More than $50,000,000
    **X** Equitable Relief
   __ Other (if so, specify) _____

**(2)     Competence**: Counsel certify that they are sufficiently knowledgeable in matters

relating to their client(s)' technological systems to competently discuss issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

**(3)** **Meet and Confer**: Pursuant to Fed. R. Civ. P. 26(f), counsel **must** meet and confer regarding matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference).  Counsel now certify that they met and conferred to discuss these issues on **September 8, 2022 and November 10, 2022.**

**(4)** **Unresolved Issues**: After the meet-and-confer conference(s) taking place on the date(s) listed above, the following issues remain outstanding and/or require court intervention: _____ Preservation; ___Search and Review; ___ Source(s) of Production; ___ Form(s) of Production; __X__Identification or Logging of Privileged Material; ___Inadvertent Production of Privileged Material; ____Cost Allocation; and/or ___Other.  Please briefly describe any specific issues below:

To date, the parties have addressed the following issues:

**(5)** **Preservation:**

(a) The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc.  To the extent that the parties have reached agreement as to preservation methods, provide details below:

**Plaintiff(s):**

AEye has issued a preservation notice to and executed a document hold on all of its officers and employees who may reasonably be expected to be custodians of potentially relevant information, with instructions on preserving all ESI that relates to the subject of this litigation (including emails, text messages, Slack communications, hard copy documents, and electronic files of any kind), including instructions on suspending the routine and/or automatic deletion of records.

**Defendant(s):**

Falcons FZE has received oral and written instructions regarding its document preservation obligations and has executed a document hold on its officers and employees who may reasonably be expected to be custodians of potentially relevant information, with instructions on

3

        preserving all ESI that in any way relate to the subject of this litigation (including emails, text messages, electronic communications, hard copy documents, and electronic files of any kind), including instructions on suspending the routine and/or automatic deletion of records.

(b)     State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications:

        The Parties have not disclosed, or agreed to disclose, information regarding their "litigation hold" communications.

(c)     At this time, the parties do not anticipate the need for judicial intervention concerning the duty to preserve, the scope, or the method(s) of preserving electronically stored Information.

**(6)**     **Search and Review:**

(a)     The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc. To the extent the parties have reached agreement as to search and review methods, provide details below:

        Both parties have indicated that they may use keyword searches to narrow the universe of potentially relevant documents to be reviewed for responsiveness.

(b)     State if the parties anticipate the need for judicial intervention concerning the search and review of electronically stored information: Not at this time.

**(7)**     **Production:**

(a)     **Source(s) of Electronically Stored Information**: The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information [e.g., email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data, etc.]:

**Plaintiff(s):**

AEye anticipates that potential sources of responsive ESI may include email, local and/or shared drives, USB storage device(s), and/or SMS/text messages.

**Defendant(s):**

Falcons FZE anticipates that potential sources of responsive ESI may include email and WhatsApp messages.

(b) **Limitations on Production**: The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) identity of custodians; (iii) date ranges for which potentially relevant data will be drawn; (iv) locations of data; (v) timing of productions (including phased discovery or rolling productions); and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:

**Plaintiff(s):**

AEye has agreed to collect potentially responsive ESI from four custodians, Blair LaCorte, Bob Brown, Jordan Greene, and Andrew Hughes, from the date range of November 1, 2020 to June 13, 2022, and from the sources identified above.

**Defendant(s):**

Falcons FZE has agreed to collect potentially responsive ESI from four custodians, Matt Novak, Daniel Cookson, Natalie Ho, and Lewis Edwards from the date range of November 1, 2020 to June 13, 2022 and from the sources identified above.

(c) **Form(s) of Production:**

(1) **The parties have reached the following agreements as to the form(s) of productions:**

A. ESI shall generally be produced in image format, either portable document format ("PDF") or Tag Image File Format ("TIFF") with Optical Character Recognition ("OCR") text, logical unitization and family relationships preserved, the metadata set forth below (Part IV), and loadfiles (e.g. .DAT, .OPT) for customary litigation review databases (e.g., Concordance or Relativity) as requested by the requesting party.

B. Parent-child relationships (the association between an attachment and its parent record) should be preserved.

C. Production should be made using appropriate electronic media of the producing party's choosing, provided that the production media chosen not impose an undue burden or expense upon the requesting party.

D. Where a document requires redaction, the unredacted content of such document should be extracted by real extracted text or OCR to a searchable text file produced with the corresponding page image(s) or embedded within the image file. Redactions should not be accomplished in a manner that serves to downgrade the ability to electronically search the unredacted portions of the document.

E. All documents shall be produced in a form that includes metadata identifying the beginning and end Bates number for each document, and each attachment, as follows:

- ProdBegBates
- ProdEndBates
- ProdBegAttach
- ProdEndAttach

F. ESI shall be produced in a manner that also includes the following metadata fields, to the extent available from the electronic file source or, in the case of bates numbering, as supplied by the producing party:

- Filename
- Filesize
- DocExt
- RecordType
- To
- From
- BCC
- CC
- Subject
- Title
- DateCreated
- DateReceived
- DateSent
- Custodian
- TimeCreated
- TimeSent
- EDSource
- EDFolder
- MD5 Hash
- TEXTPATH
- NATIVEPATH

(2) **Please specify any exceptions to the form(s) of production**

6

11937279-2

        indicated above (e.g., word processing documents in TIFF with load files, but spreadsheets in native form):

A. Information that exists in electronic form that would be difficult or impossible to produce or review in PDF or TIFF Format, such as Microsoft Excel files, audio files, or video files should be produced in Native Format. The producing party may alter the filename of any such native file to include Bates numbers or confidentiality designations. The table below supplies the Native Format in which specific types of ESI should be produced when appropriate.

| File Type | Native Format(s) |
|---|---|
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| WordPerfect documents | .WPD |
| Adobe Acrobat Documents | .PDF |
| Images | .JPG, .JPEG, .PNG |
| Audio and Video Files | .MP3, .MP4, .WAV |

B. To the extent a response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the parties agree to meet and confer to, with an understanding of which fields are relevant, agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the requesting party or counsel. Upon review of the report(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

(3) **The parties anticipate the need for judicial intervention regarding the following issues concerning the form(s) of production**: None at this time.

(d) **Privileged Material:**

(1) **Identification**: The parties have agreed to the following method(s) for the identification (including the logging, if any, or alternatively, the disclosure of the number of documents withheld), and the redaction of privileged documents:

The parties have agreed to exchange privilege logs providing information regarding all ESI withheld or redacted under a claim of privilege and/or work product protection. The parties will meet and confer further as to whether such logs will be document-by-document or categorical.

7

11937279-2

  (2) **Inadvertent Production/Claw-Back Agreements**: Pursuant to Fed R. Civ. Proc. 26(b)(5) and Fed. R. Evid. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents:

The inadvertent production of privileged or work product protected material shall not operate as a waiver. When a party gives notice to another party that certain inadvertently produced material is subject to a claim of privilege or other protection, the party who received such material must return, sequester, or destroy information upon notification, and take reasonable steps to retrieve any information they may have disclosed prior to notification.

  (3) The parties have discussed a 502(d) Order: Yes **X**; No ___

*The provisions of any such proposed Order shall be set forth in a separate document and presented to the Court for its consideration.*

(e) **Cost of Production:**

The parties have analyzed their client's data repositories and have not yet estimated the costs associated with the production of electronically stored information.

  (1) **Cost Allocation**: The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any:

The Parties shall each bear their own costs associated with the production of electronically stored information.

  (2) **Cost Savings**: The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:

The Parties have not reached an agreement on any such measures.

(f) State if the parties anticipate the need for judicial intervention concerning the production of electronically stored information: Not at this time.

**(8)** **Other Issues:** N/A.

  **The preceding constitutes the agreement(s) reached, and disputes existing, (if any) between the parties to certain matters concerning electronic discovery as of this date. To**

8

11937279-2

the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court.

Party: AEye, Inc.                By: Erica A. Wolff

Party: All Blue Falcons FZE        By: Jeremy M. King

The next scheduled meet-and-confer conference between the parties to address electronic discovery issues, including the status of electronic discovery and any issues or disputes that have arisen since the last conference or Order, shall take place on: **TBD**.

The next scheduled deadline to submit a letter with the Court for purposes of updating the Court on discovery generally, including electronic discovery, has been scheduled for **January 31, 2023**. Additional conferences, or written status reports, shall be set approximately every four (4) weeks, as determined by the parties and the Court, based on the complexity of the issues at hand. An agenda should be submitted to the Court four (4) days before such conference indicating the issues to be raised by the parties. The parties may jointly seek to adjourn the conference with the Court by Letter-Motion at least 48 hours in advance of a scheduled conference, if the parties agree that there are no issues requiring Court intervention. Additional Instructions or Orders, if any:

Dated:   New York, New York
         February 2, 2023

SO ORDERED

_____
**VALERIE FIGUEREDO**
**United States Magistrate Judge**

11937279-2