**0UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
AEYE, INC. f/k/a
CF FINANCE ACQUISITION CORP. III

                     Plaintiff,                **22-CV-4964 (RA) (VF)**

        -against-                       **OPINION AND ORDER**

ALL BLUE FALCONS FZE,

                     Defendant.
---------------------------------------------------------------X
**VALERIE FIGUEREDO, United States Magistrate Judge.**

       Plaintiff AEye Inc. ("AEye") commenced this action on June 13, 2022, asserting a claim

for breach of contract against Defendant All Blue Falcons FZE ("Falcons"). ECF No. 1. On

October 10, 2022, Falcons answered the complaint, asserted counterclaims and affirmative

defenses for breach of contract and fraudulent inducement, and sought a declaratory judgment.

ECF No. 22. In June 2023, Falcons' counsel withdrew from the representation in this action, and

Falcons subsequently ceased participating in this matter. ECF Nos. 62-64. On September 5,

2023, the Clerk of Court entered a Certificate of Default. ECF No. 73. Pending before the Court

is Falcons' motion to vacate the entry of default. ECF No. 93. For the reasons set forth below,

the motion to vacate is **GRANTED**.

## BACKGROUND

### A. Factual Background

       Plaintiff, formerly known as CF Finance Corp. III ("CF III") and now AEye, was formed

under Delaware law as a special purpose acquisition company ("SPAC") acquire or merge with a

target company to be identified at a later date. ECF No. 1 at ¶¶ 14, 17. A SPAC is an investment

vehicle used to raise capital in an initial public offering for the purpose of acquiring and/or

merging with a target private company in a transaction that results in the target company becoming public. Id. at ¶ 15. CF III completed its initial public offering in November 2020 and sought to acquire the target company, AEye, a technology company that designs light detection and ranging systems that can be used in self-driving cars and other applications. Id. at ¶ 18.

On February 17, 2021, CF III entered into an agreement and plan of merger with its wholly owned subsidiary and AEye, pursuant to which AEye would become a wholly-owned subsidiary of CF III. Id. at ¶ 20. Upon completion of the merger, CF III changed its name to AEye. Id. at ¶ 21.

CF III secured purchase commitments from investors to finance the closing of the merger through subscription agreements. Id. at ¶¶ 22-23. Under the subscription agreements, CF III agreed to issue and sell an aggregate of 22,500,000 shares of its Class A common stock, and the investors agreed to purchase these shares at $10 per share at the time of the merger. Id. at ¶ 24. Defendant Falcons, a private fund affiliated with global investment firm All Blue Capital, was one of CF III's prospective investors. Id. at ¶ 25.

On February 17, 2021, Falcons entered into a Subscription Agreement to purchase 500,000 shares of AEye's Class A common stock at $10 per share for a total of $5,000,000. Id. at ¶ 26. The Subscription Agreement had the following conditions: the closing of the merger; receipt of requisite stockholder approvals; and the continued qualification of the common stock for offering. Id. at ¶¶ 27-28. Additionally, under the Subscription Agreement, CF III was to give Falcons seven business days' notice specifying the anticipated date of the merger's closing and providing Falcons with wire instructions, and one business day before closing, Falcons was to deliver $5,000,000 to CF III by 4:00 p.m. Id. at ¶¶ 29-30. The Subscription Agreement also stated that all representations and warranties of AEye contained in the Subscription Agreement

would be true and correct in all material respects at the time of the closing (the "Closing Conditions"). ECF No. 22 at Counterclaims ¶ 4.

On August 5, 2021, as required under the Subscription Agreement, CF III sent Daniel Cookson, the director of Falcons, and Matt Novak, the managing partner of Falcons, the notice of closing indicating that the anticipated closing date was Monday, August 16, 2021, thereby requiring Falcons to deliver the funds by the preceding business day, Friday, August 13, 2021. ECF No. 1 at ¶¶ 34-35. Falcons never wired the $5,000,000 specified in the Subscription Agreement. Id. at ¶ 38.

On August 20, 2021, AEye—formerly CF III—notified Cookson and Novak that Falcons was in material breach of the Subscription Agreement. Id. at ¶ 42. On August 23, 2021, Cookson acknowledged receipt of the August 5 and August 20 notices and indicated that Falcons planned to be "able to proceed in short order." Id. at ¶ 43. On August 26, 2021, Cookson again contacted AEye, indicating that Falcons would soon fulfill its commitment under the Subscription Agreement. Id. at ¶ 44. As of June 13, 2022, Falcons still had not delivered $5,000,000 to AEye. Id. at ¶¶ 45-46.

**B.  Procedural History**

AEye commenced this action against Falcons on June 13, 2022, asserting a claim for breach of contract. Id. AEye filed a certificate of service evidencing service on Falcons on August 17, 2022. ECF No. 9. On August 22, 2022, the Honorable Ronnie Abrams referred this case to the undersigned for general pretrial supervision. ECF No. 15.

On October 10, 2022, Falcons filed its answer and counterclaims, asserting affirmative defenses and claims for breach of contract and fraudulent inducement. ECF No. 22. Falcons also sought a declaratory judgment declaring that AEye breached the Subscription Agreement and

3

Falcons had been fraudulently induced to enter into the Subscription Agreement. Id. Specifically, Falcons contends that AEye failed to meet the Closing Conditions, which were required for Falcons to make payment to AEye. Id. at Counterclaims ¶ 5. Falcons also claims that the transaction under which CF III merged with AEye was "rife with conflicts of interest." Id. at Counterclaims ¶¶ 18-20.

On November 7, 2022, AEye filed a motion to dismiss Falcons' counterclaims and to strike Falcons' affirmative defenses. ECF No. 26. AEye's motion is fully briefed and pending before the Court. See ECF Nos. 27, 34, 40.

The parties participated in discovery from October 2022 through June 2023. See, e.g., ECF Nos. 24, 32, 50, 60. On June 26, 2023, Falcons' counsel moved to withdraw his representation because Falcons could no longer afford to pay its legal fees. ECF Nos. 62-63. The Court granted the motion to withdraw and adjourned all deadlines in the matter to enable Falcons to retain new counsel to represent it in this action. ECF No. 64. The Court directed Falcons to retain new counsel or otherwise submit a status update on its search for new counsel by July 28, 2023. Id. Falcons neither retained new counsel nor submitted a status update by the July 28 deadline. On August 8, 2023, the Court *sua sponte* extended Falcons' deadline to retain counsel to September 1, 2023. ECF No. 69. The Court warned Falcons that if it did not retain new counsel by that date, "AEye will be granted leave to obtain a Certificate of Default and move for default judgment." Id. Falcons, who by that point was unrepresented, did not receive notice of the Court's August 8 order. ECF No. 95 at ¶ 39.

On September 5, 2023, AEye requested that a Certificate of Default be entered, and a Certificate of Default was entered the same day. ECF Nos. 72-73. Falcons did not receive notice of AEye's request for a Certificate of Default, nor did it receive notice of the entry of the

Certificate of Default. ECF No. 95 at ¶ 39. On September 29, 2023, AEye filed a motion for default judgment. ECF Nos. 74-79. On October 2, 2023, and November 13, 2023, AEye filed affidavits of service, indicating that the motion for default judgment was served on Falcons by mail, but the mailed copy was returned to AEye because it was "refused by recipient." ECF Nos. 80-82. Four months later, on March 1, 2024, AEye sought permission from the Court to serve Falcons by alternate means of service, specifically, e-mail. ECF Nos. 84-85. Three months later, on June 6, 2024, AEye sent a copy of the motion for default judgment to Falcons via e-mail. ECF No. 95 at ¶ 40.

On June 24, 2024, the Court entered an Order to Show Cause why default judgment should not be entered (ECF No. 86), and a hearing was held on July 24, 2024 (ECF No. 91). Falcons' new counsel entered an appearance on July 24, 2024, and attended the hearing. ECF Nos. 88-89, 91.

On August 7, 2024, Falcons filed the instant motion to vacate the Certificate of Default. ECF Nos. 93-95. AEye filed an opposition on September 13, 2024 (ECF No. 99), and Falcons filed a reply on September 27, 2024 (ECF No. 101).

## LEGAL STANDARD

Under Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment . . . is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Under Rule 55(c), "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c).

Courts examine the same factors in deciding whether to set aside a default or a default judgment: "whether the default was willful"; "whether a meritorious defense is presented"; and

"whether setting aside the default would prejudice the adversary." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); see also Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 454-55 (2d Cir. 2013); Arroyo v. Kent Sec. Servs., No. 22-CV-0073 (MMG) (KHP), 2024 WL 3643794, at *2 (S.D.N.Y. Apr. 24, 2024), adopted by, 2024 WL 3634708 (S.D.N.Y. Aug. 1, 2024); Holzman Fabian Diamonds Ltd. v. R & E Diamonds LLC, No. 17-CV-9489 (AJN), 2019 WL 1099944, at *1 (S.D.N.Y. Mar. 8, 2019). The standard for setting aside an entry of default, however, is more lenient than the standard for setting aside a default judgment. See Am. Alliance Ins. Co. Ltd. v. Eagles Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996); see also Team Kasa, LLC v. Humphrey, No. 17-CV-1074 (JS) (AKT), 2018 WL 1867117, at *2 (E.D.N.Y. Jan. 24, 2018) ("Where, as here, the clerk has entered a notation of default but a default judgment has not yet been rendered, the Court applies the 'good cause' standard set forth in Rule 55(c)[, rather than the more stringent standard for vacating default judgment]."). Whether to grant a motion to vacate is within the Court's discretion, Cabrera v. Freedom Mortg. Corp., No. 23-CV-10556 (JLR), 2024 WL 1805558, at *2 (S.D.N.Y. Apr. 25, 2024), and "[a]s a general matter, defaults are disfavored, and the Second Circuit has expressed a 'strong preference for resolving disputes on the merits.'" Abuladze v. Apple Commuter Inc., No. 22-CV-08684 (MMG) (RFT), 2024 WL 1464761, at *2 (S.D.N.Y. Apr. 4, 2024) (quoting New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005)); see also Enron Oil Corp., 10 F.3d at 97 (stating that "defaults . . . are particularly disfavored").

AEye obtained a Certificate of Default against Falcons (see ECF No. 73) but has not yet obtained a default judgment. Accordingly, the Court weighs the "good cause" factors under the more lenient standard in Rule 55(c). See Abuladze, 2024 WL 1464761, at *3; King v. Regen

Med. Mgmt., LLC, No. 20-CV-6050 (AJN), 2021 WL 4066598, at *1-2 (S.D.N.Y. Sept. 7, 2021).

## DISCUSSION

### A. Falcons' Motion to Vacate

AEye raises several arguments in opposition to the motion to vacate. First, AEye argues that Falcons' default was willful because Falcons participated in the litigation for over a year before its counsel withdrew, and Falcons knew of its obligation to obtain new counsel but failed to do so by the court-ordered deadline. ECF No. 99 at 10-11. Second, AEye contends that the default should not be vacated because Falcons' defenses of fraudulent inducement and breach of contract lack merit. Id. at 13-20. Third, AEye argues that vacating the default will cause delay, there is a risk that Falcons will not be able to engage in productive discovery, and AEye could cease to exist without prompt recovery of a judgment against Falcons. Id. at 20-24. Finally, AEye argues that if the Court grants Falcons' motion, Falcons should be required to post a bond in the amount of $5,000,000. Id. at 24-25. AEye also requests that the Court order Falcons to pay AEye's attorneys' fees and costs incurred as a result of Falcons' default. Id.

Falcons counters that its default was not willful because it stopped receiving notices of AEye's filings and the Court's orders after its counsel withdrew from the case in June 2023. ECF No. 94 at 2, 13; ECF No. 95 at ¶ 39. Falcons further argues that its defenses are meritorious, as its answer articulated the defenses with the requisite degree of specificity. ECF No. 94 at 18. Finally, Falcons argues that AEye will not be prejudiced because, although vacatur may cause delay, "delay standing alone does not establish prejudice." Id. at 19 (internal quotation marks omitted) (quoting Enron, 10 F.3d at 98). As explained below, the relevant factors weigh in favor of vacating the Certificate of Default.

### 1. *Falcons' Willfulness*

A finding of willfulness "requires 'something more than mere negligence,' such as 'egregious or deliberate conduct.'" Abuladze, 2024 WL 1464761, at *2 (quoting Green, 420 F.3d at 108). "Conduct may be found to be willful where it is egregious, not satisfactorily explained, or is rationalized by flimsy excuse." Aetna Life Ins. Co. v. Licht, No. 03-CV-6764 (PKL) (JCF), 2004 WL 2389824, at *4 (S.D.N.Y. Oct. 25, 2004). When a defendant does not deny that he received the complaint, the court's orders, or the notice of default, and "does not contend that his non-compliance was due to circumstances beyond his control," willful default can be inferred. Guggenheim Cap., LLC, 722 F.3d at 455 (holding that district court did not err in finding that defendant willfully defaulted where he received the complaint and the court's orders and never answered). In contrast, "a default is not willful when it was caused by 'a mistake made in good faith.'" Abuladze, 2024 WL 1464761, at *2 (quoting Enron, 10 F.3d at 96). Stated differently, a finding of willfulness is appropriate where "there is evidence of bad faith." Holland v. James, No. 05-CV-05346 (KMW) (KNF), 2008 WL 3884354, at *2 (S.D.N.Y. Aug. 21, 2008) (internal quotation marks and citation omitted).

Falcons appeared in this action and participated in the litigation for approximately one year, until its counsel withdrew on June 26, 2023. See ECF Nos. 22, 62. Following counsel's withdrawal, Falcons failed to retain new counsel, as directed by the Court. ECF Nos. 64, 69. Although Falcons received the Court's order instructing it to retain new counsel (see ECF No. 64), Falcons did not receive the Court's subsequent orders or AEye's filings seeking a certificate of default and default judgment. ECF No. 94 at 15; ECF No. 95 at ¶¶ 37-39.

Further, Falcons did not learn of the entry of default until June 6, 2024—nine months after the Clerk of Court entered the Certificate of Default—in part because AEye delayed in

serving Falcons with the relevant filings. ECF No. 94 at 15; ECF No. 95 at ¶ 40. AEye secured a

Certificate of Default on September 5, 2023 (ECF Nos. 71-73) and moved for default judgment

on September 29, 2023 (ECF No. 74). AEye attempted to serve Falcons with the moving papers

by mail. ECF Nos. 80-82. But the papers were returned as undeliverable, and AEye did not then

immediately attempt to serve Falcons by alternate means. More than four months elapsed after

the motion papers were returned to AEye before AEye sought permission to serve Falcons by

alternate means—namely e-mail. ECF No. 83. AEye then waited nearly three months after the

Court granted it leave to serve Falcons by alternate means (ECF No. 84) to actually serve

Falcons by e-mail. ECF No. 85. All told, nine months elapsed during which time Falcons did not

have notice of the Certificate of Default or of AEye's default judgment motion. ECF No. 85-1.

     However, once informed of the procedural posture of the case, Falcons exercised the

necessary diligence. Within weeks of receiving AEye's e-mail and learning of the Certificate of

Default and pending motion for default judgment, Falcons retained new counsel. ECF Nos. 88-

89. Falcons also appeared for the Court's July 24, 2024 show cause hearing, and has since

demonstrated that it intends to continue litigating this action by, for example, engaging in the

instant motion practice. See ECF Nos. 88-91, 93-95, 101.

     In short, Falcons' conduct was not egregious and there is no evidence that Falcons acted

in bad faith. At worst, Falcons was negligent in failing to immediately retain new counsel upon

its prior counsel's departure. But given its lack of notice of AEye's subsequent filings and court

orders that followed counsel's withdrawal, Falcons' conduct does not rise to the requisite

willfulness that warrants denial of a motion to vacate the default. See RLS Assocs., LLC v.

United Bank of Kuwait PLC, No. 01-CV-1290 (CSH), 2002 WL 122927, at *7 (S.D.N.Y. Jan.

29, 2002) (finding that defendant corporation was "careless or negligent in failing to retain

counsel" but that such negligence did not amount to willfulness). Moreover, soon after learning

of the Certificate of Default and default judgment motion, Falcons retained new counsel and has

participated in the litigation, further militating against a finding of willfulness. See, e.g., Pepaj v.

Innovative Facility Servs., LLC, No. 23-CV-7159 (JPC) (BCM), 2024 WL 2137969, at *3

(S.D.N.Y. May 13, 2024) (finding that defendant did not willfully default where, after learning

of the motion for default judgment, defendants complied with court-ordered deadline and

"attempted to participate in the action") (internal quotation marks and citation omitted);

Christiani v. Metro-N. Commuter R.R. Co., No. 92-CV-4494 (JFK), 1994 WL 74881, at *3

(S.D.N.Y. Mar. 7, 1994) (holding that missed filing deadlines by attorney did not demonstrate

that the default was "willful, as in intentional, or knowing, or voluntary, as distinguished from

accidental") (internal quotation marks and citation omitted); Coffey v. Switzoor, No. 23-CV-682

(GRB) (AYS), 2023 WL 4824421, at *3 (E.D.N.Y. June 8, 2023) (finding defendant did not

willfully default where, "[u]pon being served with Plaintiff's motion for default judgment on

March 15, 2023, Defendants engaged counsel and filed their Answer"); see also Alexander v.

Private Protective Servs., Inc., No. 19-CV-10004 (JPO) (SDA), 2021 WL 3862057, at *2

(S.D.N.Y. Aug. 30, 2021) ("Resolving any doubts in favor of Defendant, the Court finds that

Defendant's conduct was not willful."). Therefore, the first factor weighs in favor of vacatur.

   2.  *Merit of Falcons' Defenses*

   "A defense is meritorious if it is good at law so as to give the factfinder some

determination to make." Am. Alliance Ins. Co., 92 F.3d at 61 (internal quotation marks and

citation omitted). "While a defendant must do more than offer conclusory assertions or dispute

the amount of damages, the bar for such a showing is not high: a defendant's allegations are

meritorious if they contain even a hint of a suggestion which, if proven at trial, would constitute

a complete defense." <u>Carrasco v. Acropol Rest. Corp.</u>, No. 18-CV-7883 (OTW), 2019 WL

2325556, at *3-4 (S.D.N.Y. May 31, 2019) (internal quotation marks and citations omitted).

Falcons' allegations in its Answer suggest that, if proven at trial, Falcons' defenses and

counterclaims would constitute a complete defense to AEye's claim. For example, Falcons

alleges that AEye did not satisfy the Subscription Agreement's Closing Conditions, and thus

Falcons' duty to pay was never triggered. ECF No. 22 at Affirmative Defenses ¶ 56; ECF No. 22

at Counterclaims ¶¶ 39-40, 72-77; ECF No. 94 at 17-19. AEye nevertheless contends that

Falcons' defense is not a complete defense, because even if AEye failed to satisfy its Closing

Conditions, that would not constitute a material breach that would excuse performance. ECF No.

99 at 19-20. But this argument misses the point. At this stage, "the defense need not be

ultimately persuasive" to constitute a meritorious defense, and the Court is not to determine

questions of fact related to the defenses. <u>Am. All. Ins. Co.</u>, 92 F.3d at 61 (holding that the district

court erred in requiring conclusive evidence of defense at motion-to-vacate stage because the

court "was not the trier of fact on this issue and should not have required such evidence").

Whether a breach is material is generally a question of fact. <u>See, e.g.</u>, <u>Manhattan Life Ins. Co. v.</u>

<u>Prussian Life Ins.</u>, 269 F. 39, 42 (2d Cir. 1924); <u>Kuhbier v. McCartney, Verrino & Rosenberry</u>

<u>Vested Producer Plan</u>, 239 F. Supp. 3d 710, 735 (S.D.N.Y. 2017). In short, at this stage of the

litigation, Falcons' breach-of-contract defense is sufficiently pled to constitute a meritorious

defense. <u>See, e.g.</u>, <u>Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos</u>, 109

F.R.D. 692, 696-97 (S.D.N.Y. 1986) (finding that defendant "satisfied its relatively light burden

of demonstrating the existence of meritorious defenses" even where the court was "far from

convinced that [defendant's] defenses will prevail at trial"); <u>Coffey</u>, 2023 WL 4824421, at *4

(finding that existence of "the possibility of a meritorious defense" weighed in favor of vacatur).

Further, with regards to its fraudulent inducement defense, Falcons points to specific representations by AEye, on which Falcons relied when entering into the Subscription Agreement, that were purportedly false. ECF No. 22 at Affirmative Defenses ¶ 59; ECF No. 22 at Counterclaims ¶¶ 26-35, 41-42, 78-85. AEye argues that Falcons' fraudulent inducement defense is not actionable because it relies on puffery. ECF No. 99 at 14-19. But only one meritorious defense is needed to warrant vacatur. See Windward Bora, LLC v. Weiss, No. 20-CV-3668 (FB) (JAM), 2024 WL 630499, at *9 (E.D.N.Y. Feb. 15, 2024) (explaining that "because Defendant . . . has raised at least one meritorious defense, she has satisfied her burden for vacating an entry of default"). As such, the Court need not determine whether Falcons' fraudulent inducement defense is meritorious, given Falcons' assertion of another meritorious defense to the breach-of-contract claim.

Regardless, Falcons' fraudulent inducement defense is also meritorious for purposes of a motion to vacate. A successful claim for fraudulent inducement requires "a misrepresentation of a material fact that was known to be false and intended to be relied on when made," and was reasonably relied on by the party claiming fraudulent inducement to its detriment. Loop Prod. v. Cap. Connections LLC, 797 F. Supp. 2d 338, 351 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). Certain language Falcons points to in support of its fraudulent inducement claim is mere puffery (see, e.g., ECF No. 22 at Counterclaims ¶ 26 ("[AEye] stated the deal . . . was going to be 'white hot' and a 'really great deal'")), and thus inactionable. See Coppelson v. Serhant, 19-CV-8481 (LJL), 2021 WL 148088, at *6 (S.D.N.Y. Jan. 15, 2021) ("Statements that amount to little more than mere puffery, opinions of value or future expectations do not constitute actionable fraud [or fraudulent inducement].") (cleaned up) (internal quotation marks and citation omitted). Falcons, however, also alleges that AEye delivered a presentation to

12

Falcons that contained "flawed" projections and valuations that induced Falcons to enter into the Subscription Agreement. ECF No. 22 at Counterclaims ¶ 34. If Falcons can prove at trial that the presentation contained misrepresentations of existing fact, Falcons' fraudulent inducement claim would constitute a complete defense to AEye's breach-of-contract claim. See, e.g., Camofi Master LDC v. Coll. P'ship, Inc., 452 F. Supp. 2d 462, 474 (S.D.N.Y. 2006) (explaining that valid defense of fraudulent inducement requires "a misrepresentation of an existing material fact"); see also Faller Grp. v. Jaffe, 564 F. Supp. 1177, 1182 (S.D.N.Y. 1983) ("Fraudulent inducement is a complete defense to a claim brought under a contract."). Falcons' pleading of meritorious defenses therefore weighs in favor of vacatur.

### 3. Prejudice to AEye

"To be considered prejudicial, vacatur of a default must result in tangible harm beyond mere delay." McInnis USA Inc. v. Aggrecem Mech., LLC, No. 21-CV-1253 (MKV), 2022 WL 3028980, at *2 (S.D.N.Y. Aug. 1, 2022). "A plaintiff may demonstrate prejudice by showing 'that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" Abuladze, 2024 WL 1464761, at *3 (quoting Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983)).

AEye argues that vacatur will be prejudicial because of the delay; the unnecessary litigation costs AEye has had to expend because of Falcons' default (ECF No. 99 at 22-23); the risk that Falcons will be unable to engage in productive discovery (id. at 22); and the risk that AEye will ultimately be unable to recover if successful on its claim (id. at 23-24).

As an initial matter, delay alone is insufficient to warrant denial of vacatur. See Enron, 10 F.3d at 98. Similarly, "costs incurred with respect to countering a defendant's motion to vacate do not constitute prejudice." OneWest Bank, N.A. v. Ruiz, No. 14-CV-3207 (RRM) (RLM),

13

2018 WL 1318983, at *3 (E.D.N.Y. Mar. 13, 2018) (internal quotation marks and citation omitted); see also Peleus Ins. Co. v. Milestone Constr. Corp., No. 22-CV-10933 (JGLC), 2024 WL 124630, at *3 (S.D.N.Y. Jan. 11, 2024) ("Because Plaintiff does not state any basis for finding prejudice other than litigation related costs, setting aside the entry of default will not prejudice Plaintiff."). Further, costs related to obtaining a Certificate of Default and moving for default judgment do not constitute prejudice, because a litigant "would have incurred legal fees and costs in pursuing their claims had [the other party] not defaulted." Hernandez v. La Cazuela de Mari Rest., Inc., 538 F. Supp. 2d 528, 534 (E.D.N.Y. 2007). "The incurrence of these costs," specifically, costs related to moving for a default judgment, "does not establish prejudice." Id. AEye's arguments regarding delay and costs are therefore unavailing.

Turning to AEye's argument that there is a risk that Falcons will not be able to produce discovery, courts do consider "increased difficulties of discovery" when analyzing prejudice to the party opposing vacatur. Davis, 713 F.2d at 916. AEye argues that because Falcons did not complete its document productions before the entry of default, there is a possibility that Falcons will be unable to do so now. ECF No. 99 at 22. But this is speculation by AEye, and there is no evidence in the record to indicate that Falcons has failed to properly retain documents in the midst of its default.

As another basis for prejudice, AEye identifies three employees of Falcons—two employees who have left Falcons and Novak—that AEye seeks to depose, but who may be unavailable due to the time that has elapsed. Id. Falcons, however, provides assurances that one of the three individuals (Novak) will be available for a deposition. ECF No. 101 at 8. Specifically, Falcons represents that Novak, as well as Cookson, "both of whom were involved in the transaction, are available for depositions." Id. And with regards to the other two

individuals who have left Falcons, Falcons represents that they were "junior employees" with "very limited involvement in this matter." Id.

Where a court has found that vacatur was prejudicial to the non-moving party due to the increased difficulties of discovery, there was a "substantial likelihood that relevant evidence [was] unavailable." Nw. Mut. Life Ins. Co. v. DeMallerary, 789 F. Supp. 651, 654 (S.D.N.Y. 1992) (denying vacatur in a dispute over a disability income insurance policy because defendant had testified "that he ha[d] no records concerning his income"); see also Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc., No. 17-CV-5001 (MKB) (RML), 2020 WL 6390162, at *8 (E.D.N.Y. Nov. 2, 2020) (denying vacatur where "Defendants ha[d] already been found to have altered records and to have destroyed their file server in a similar previous case to avoid forensic examination") (internal quotation marks and citation omitted). AEye has not shown a substantial likelihood that relevant evidence will be unavailable. Falcons represents that Novak and Cookson, two key individuals involved in the relevant transaction, are available for depositions. ECF No. 101 at 8. And given the limited involvement in the disputed transaction of the two unavailable junior employees, it is not apparent that they will have relevant evidence that AEye cannot obtain from Novak, Cookson, or another more senior Falcons employee. Further, there is no indication that relevant documentary evidence has been lost. Therefore, this is not a case where the difficulties of discovery necessitate denial of the motion to vacate the default. See Johnson v. New York Univ., 324 F.R.D. 65, 71 (S.D.N.Y. 2018) (granting vacatur despite argument that defendants had a history of withholding documents and intimidating witnesses), aff'd, 800 F. App'x 18 (2d Cir. 2020).

With regards to AEye's contention that it will be unable to collect a future judgment (ECF No. 99 at 23-24), a potential "difficult[y] . . . recuperating [] losses" does not warrant

denial of vacatur. Durso v. Mod. Food Ctr., Inc., No. 17-CV-7324 (LAK) (GWG), 2019 WL

2150424, at *8 (S.D.N.Y. May 17, 2019) (finding that arguments regarding potential difficulty

recuperating losses did not establish more than minimal prejudice, but denying vacatur on

grounds that defendant lacked a meritorious defense); but see Gesualdi v. Quadrozzi Equip.

Leasing Corp., No. 11-CV-115 (RJD) (VMS), 2016 WL 4487668, at *13 (E.D.N.Y. Aug. 3,

2016) (denying vacatur of default judgment where defendant company had been dissolved four

years prior, thus "jeopardiz[ing] Plaintiff's likelihood of recovery"), adopted by, 2016 WL

7322333 (E.D.N.Y. Dec. 15, 2016), aff'd, 707 F. App'x 59 (2d Cir. 2017). Here, notwithstanding

AEye's allegations that Novak and Cookson have dissolved entities when sued in the past (ECF

No. 99 at 24; ECF No. 100 at ¶ 79), there is no evidence that Falcons has been or will soon be

dissolved. See Durso, 2019 WL 2150424, at *8 (finding that plaintiffs did not "demonstrate[]

how the prospect of discovery would diminish with time" where defendant would "be in the

same financial situation whether or not vacatur is granted"). In any event, as discussed *infra* at

17-20, the risk that AEye will be unable to recover if it is ultimately successful on the merits can

be mitigated by conditioning vacatur on Falcons posting a bond.

       In sum, AEye's arguments for prejudice do not warrant denial of vacatur under the more

lenient standard for setting aside a Certificate of Default. See Pepaj, 2024 WL 2137969, at *3

("Plaintiff will not be prejudiced by setting aside the entry of default where defendant appeared

in the action prior to receiving notice of the entry of default, and moved to set aside the entry of

default immediately upon receiving such notice.") (internal quotation marks omitted) (quoting

Fonseca v. Columbia Gas Sys., Inc., 37 F. Supp. 2d 214, 232 (W.D.N.Y. 1998)).

**B.   AEye's Request for a Bond and an Award of Attorneys' Fees**

AEye requests that the Court condition vacatur on the posting of a bond by Falcons in the amount of $5,000,000. ECF No. 99 at 24-25. In determining whether to set aside an entry of default, "a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party." Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 515 (2d Cir. 2001). The Second Circuit has approved conditioning vacatur on "posting of a security for payment of all or part of an eventual adjudicated judgment." Id.; see also Sales v. Republic of Uganda, No. 90-CV-3972 (CSH), 1992 WL 406482, at *4-5 (S.D.N.Y. Dec. 30, 1992) (explaining that a court can condition vacatur of an entry of default under Rule 55(c) on the posting of a bond).

"Not every case will warrant conditioning vacatur on the posting of . . . [a] bond," and "[w]hether there is justification for such a condition will depend on the circumstances of the case." Powerserve Int'l, Inc., 239 F.3d at 515. Courts generally impose a condition on vacatur when the defendant defaulted willfully, the defendant was insolvent or otherwise financially unstable, or the defendant demonstrated a tendency to transfer assets to evade collection of a prospective judgment against it. See, e.g., id. at 516 (affirming the conditioning of vacatur on a bond where there was evidence of defendants' actual and potential transfer of assets); Triboro Entmt. Grp., Inc. v. Filmcat Inc., No. 93-CV-6798 (JFK), 1995 WL 479483, at *3 (S.D.N.Y. Aug. 11, 1995) (requiring bond "in light of defendants' professed insolvency") (internal quotation marks omitted); First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda, 877 F.2d 189, 196 (2d Cir. 1989) (conditioning vacatur on defendant posting a bond because there was "evidence that Antigua responded to this lawsuit only when First Fidelity began to grasp its

17

assets"); Walpex Trading Co., 109 F.R.D. at 698 (imposing condition on vacatur due in part to "the possibly willful nature of defendant's default").

Here, as discussed *supra* at 8-10, Falcons' default was not willful. Courts in this district, have nevertheless conditioned vacatur on a defendant posting a bond for a portion of the damages sought even where the default was not willful. See, e.g., Triboro Ent. Grp., Inc., 1995 WL 479483, at *3 (conditioning vacatur on posting of a $200,000 bond despite default not being willful). Further, as AEye correctly points out and Falcons concedes, Falcons is struggling financially. ECF No. 99 at 24; see also ECF Nos. 63 at ¶¶ 6-8 (indicating that Falcons could no longer afford its legal fees), 95 at ¶¶ 34-35 (stating that "the lack of cash and funding negatively impacted all of the business operations of Falcons"). Indeed, Falcons' prior counsel withdrew because Falcons was unable to pay its legal fees. ECF Nos. 62-64. AEye also points to a previous lawsuit against an entity affiliated with Falcons that led to Novak and Cookson liquidating the defendant entity, purportedly to thwart the plaintiff's recovery.[1] See ECF No. 100 at ¶ 79 (citing Mizuho Sec. USA LLC v. All Blue Inv. Mgmt. LTD., No. 651140/2024 (Sup. Ct., N.Y. Cty.)); see also ECF No. 100-12.

Falcons' financial condition may therefore hinder AEye's ability to recover in the event that AEye is successful on the merits. See Bangkok Bank Ltd. v. Wallant Int'l Trade, Inc., No. 88 CIV. 2675 (JFK), 1989 WL 156299, at *3 (S.D.N.Y. Dec. 18, 1989) (conditioning vacatur on defendant posting a bond where there was a risk that defendant entity would liquidate itself). In short, given Falcons' financial distress, it is appropriate to condition vacatur on Falcons posting a bond for a portion of AEye's ultimate recovery. See Tile, Inc. v. Computron Sys. Int'l, No. 20-CV-2297 (BMC), 2021 WL 3861721, at *3 (E.D.N.Y. Aug. 30, 2021) (holding that "potential

---

[1] Falcons acknowledges that the affiliated entity that was named as a defendant in Mizuho Sec. USA LLC is undergoing a formal liquidation process. ECF No. 101 at 8-9.

prejudice that plaintiff has so far incurred [as a result of default] can be alleviated" by defendants posting a bond and paying attorneys' fees). A bond is therefore necessary to protect AEye's rights, as Falcons failed to retain counsel when ordered to do so and only re-emerged to participate in this litigation once its assets were at risk due to AEye's pending motion for default judgment. First Fid. Bank, N.A., 877 F.2d at 196 (reasoning that "[plaintiff]'s rights must be protected, for there is some evidence that [defendant] responded to this lawsuit only when [plaintiff] began to grasp its assets").

The Court, however, has discretion as to the conditions imposed. Powerserve Int'l, 239 F.3d at 515. Requiring Falcons to post a bond in the amount of $5,000,000, given Falcons' financial condition, may very well inhibit Falcons' ability to litigate this action on the merits and may result in another default. Falcons represents that it "now has access to the funding necessary to defend against [AEye]'s claims and prosecute its counterclaims," but there is no evidence that Falcons' financial condition has otherwise improved. ECF No. 95 at ¶ 47. The Court therefore grants AEye's request that vacatur be conditioned on Falcons posting a bond, but in the amount of $500,000 rather than $5,000,000. See, e.g., id. (upholding district court's imposition of a condition on vacatur despite defendants' contention that payment of the condition was impossible due to defendants' financial struggles); Walpex Trading Co., 109 F.R.D. at 698 (conditioning vacatur of entry of default on bond of $500,000 where total potential recovery was $2,000,000).

AEye also requests that the Court award it the attorneys' fees and costs it incurred as a result of Falcons' default. ECF No. 99 at 25. "When granting vacatur, courts routinely require 'that the defaulting party reimburse the plaintiff its reasonable attorneys' fees and costs incurred as a result of the default.'" Trisura Ins. Co. v. Bighorn Constr. & Reclamation, LLC, No. 23-CV-

11053 (GHW) (JW), 2024 WL 1658853, at *4 (S.D.N.Y. Apr. 17, 2024) (quoting Puddu v. 6D Glob. Techs., Inc., No. 15-CV-8061 (AJN), 2020 WL 2833852, at *5 (S.D.N.Y. May 31, 2020)). A "finding of willfulness" is "not require[d]" in order to award attorneys' fees. Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 52 (E.D.N.Y. 2008); see also RLS Assocs., 2002 WL 122927, at *8 (S.D.N.Y. Jan. 29, 2002).

Here, an award of attorney's fees is appropriate. Although Falcons did not willfully default, it was aware of the Court's June 28, 2023 order requiring it to obtain new counsel. Falcons ignored that order for approximately one year (ECF Nos. 64, 69), and during that time it did not once seek an extension of time to obtain new counsel or inform the Court that it was still attempting to find new counsel. As a result, AEye incurred additional legal expenses to obtain a Certificate of Default and seek the entry of a default judgment. An award of AEye's reasonable attorneys' fees is thus appropriate. See RLS Assocs., 2002 WL 122927, at *8 (explaining that "because [defendant]'s negligence in failing to retain counsel . . . caused [plaintiff] the unnecessary burden of applying for default judgment, [plaintiff] may recover from [defendant] the costs incurred as a result of the default, including an allowance for attorney[s'] fees reasonably incurred in this regard"). Falcons is therefore directed to pay AEye's reasonable attorneys' fees and costs related to obtaining the entry of default and filing the default judgment motion.

## **CONCLUSION**

In sum, the motion to vacate the Certificate of Default is GRANTED. The Clerk of Court is respectfully directed to vacate the Certificate of Default. Further, Falcons is directed to pay AEye's reasonable attorneys' fees and costs related to AEye's motions for a Certificate of Default and default judgment. Falcons is also directed to post a bond in the amount of $500,000 by **March 28, 2025**. The Clerk of Court is directed to terminate the motion at ECF No. 93 and AEye's motion for default judgment at ECF No. 74, which is now moot.

DATED:     New York, New York
            February 24, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge