**0UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
AEYE, INC. f/k/a CF FINANCE ACQUISITION CORP. III

Plaintiff,

-against-

ALL BLUE FALCONS FZE,

Defendant.
---------------------------------------------------------------X

**22-CV-4964 (RA) (VF)**

**REPORT & RECOMMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge**

**To: THE HONORABLE RONNIE ABRAMS, United States District Judge.**

Plaintiff AEye Inc. ("AEye") commenced this action on June 13, 2022, asserting a claim for breach of contract against Defendant All Blue Falcons FZE ("Falcons"). ECF No. 1. On October 10, 2022, Falcons answered the complaint, asserted counterclaims and affirmative defenses for breach of contract and fraudulent inducement, and sought a declaratory judgment. ECF No. 22. Falcons has not appeared to defend this case or pursue its counterclaims since March 28, 2025. See ECF No. 103. Pending before the Court is AEye's motion for default judgment against Falcons and motion to strike Falcons' answer and affirmative defenses and dismiss its counterclaims. ECF No. 106. For the reasons set forth below, I respectfully recommend that the motion be **GRANTED**, that default judgment be entered against Falcons, that Falcons' answer be stricken, and that Falcons' counterclaims be dismissed. Further, I respectfully recommend that AEye be awarded damages for its claim in the amount of $5,000,000, as well as pre-judgment interest at a rate of 9% per annum, and attorney's fees in the amount of $26,944.13.

## BACKGROUND

### A. Factual Background[1]

Plaintiff, formerly known as CF Finance Corp. III ("CF III") and now AEye, was formed under Delaware law as a special purpose acquisition company ("SPAC") to acquire or merge with a target company to be identified at a later date. ECF No. 1 at ¶¶ 14, 17. A SPAC is an investment vehicle used to raise capital in an initial public offering for the purpose of acquiring and/or merging with a target private company in a transaction that results in the target company becoming public. Id. at ¶ 15. CF III completed its initial public offering in November 2020 and sought to acquire the target company, AEye, a technology company that designs light detection and ranging systems that can be used in self-driving cars and other applications. Id. at ¶ 18.

On February 17, 2021, CF III entered into an agreement and plan of merger with its wholly owned subsidiary and AEye, pursuant to which AEye would become a wholly owned subsidiary of CF III. Id. at ¶ 20. Upon completion of the merger, CF III changed its name to AEye. Id. at ¶ 21.

CF III secured purchase commitments from investors to finance the closing of the merger through subscription agreements. Id. at ¶¶ 22-23. Under the subscription agreements, CF III agreed to issue and sell an aggregate of 22,500,000 shares of its Class A common stock, and the investors agreed to purchase these shares at $10 per share at the time of the merger. Id. at ¶ 24. Defendant Falcons, a private fund affiliated with global investment firm All Blue Capital, was one of CF III's prospective investors. Id. at ¶ 25.

---

[1] The facts recounted here are established by the evidence submitted in support of this inquest and the allegations in the complaint, which are deemed admitted except as to damages, because of Falcons' default. See Finkel v. Romanowicz, 577 F.3d 79, 83-84 (2d Cir. 2009).

On February 17, 2021, Falcons entered into a Subscription Agreement to purchase 500,000 shares of AEye's Class A common stock at $10 per share for a total of $5,000,000. Id. at ¶ 26. The Subscription Agreement had the following conditions: the closing of the merger; receipt of requisite stockholder approvals; and the continued qualification of the common stock for offering. Id. at ¶¶ 27-28. Additionally, under the Subscription Agreement, CF III was to give Falcons seven business days' notice of the anticipated date of the merger's closing and provide Falcons with wire instructions, and one business day before closing, Falcons was to deliver $5,000,000 to CF III by 4:00 p.m. Id. at ¶¶ 29-30. The Subscription Agreement also stated that all representations and warranties of AEye contained in the Subscription Agreement would be true and correct in all material respects at the time of the closing (the "Closing Conditions"). ECF No. 22 at Counterclaims ¶ 4.

On August 5, 2021, as required under the Subscription Agreement, CF III sent Daniel Cookson, the director of Falcons, and Matt Novak, the managing partner of Falcons, the notice of closing indicating that the anticipated closing date was Monday, August 16, 2021, thereby requiring Falcons to deliver the funds by the preceding business day, Friday, August 13, 2021. ECF No. 1 at ¶¶ 34-35. Falcons never wired the $5,000,000 specified in the Subscription Agreement. Id. at ¶ 38.

On August 20, 2021, AEye—formerly CF III—notified Cookson and Novak that Falcons was in material breach of the Subscription Agreement. Id. at ¶ 42. On August 23, 2021, Cookson acknowledged receipt of the August 5 and August 20 notices and indicated that Falcons planned to be "able to proceed in short order." Id. at ¶ 43. On August 26, 2021, Cookson again contacted AEye, indicating that Falcons would soon fulfill its commitment under the Subscription

Agreement. Id. at ¶ 44. As of June 13, 2022, Falcons still had not delivered $5,000,000 to AEye. Id. at ¶¶ 45-46.

**B. Procedural History**

AEye commenced this action against Falcons on June 13, 2022, asserting a claim for breach of contract. ECF No. 1. AEye filed a certificate of service evidencing service on Falcons on August 17, 2022. ECF No. 9. On August 22, 2022, the Honorable Ronnie Abrams referred this case to the undersigned for general pretrial supervision. ECF No. 15.

On October 10, 2022, Falcons filed its answer and counterclaims, asserting affirmative defenses and claims for breach of contract and fraudulent inducement. ECF No. 22. Falcons also sought a declaratory judgment declaring that AEye breached the Subscription Agreement and Falcons had been fraudulently induced to enter into the Subscription Agreement. Id. Specifically, Falcons contends that AEye failed to meet the Closing Conditions, which were required for Falcons to make payment to AEye. Id. at Counterclaims ¶ 5. Falcons also claims that the transaction under which CF III merged with AEye was "rife with conflicts of interest." Id. at Counterclaims ¶¶ 18-20.

On November 7, 2022, AEye filed a motion to dismiss Falcons' counterclaims and to strike Falcons' affirmative defenses. ECF No. 26. AEye's motion is fully briefed and pending before the Court. See ECF Nos. 26, 34, 40.

The parties participated in discovery from October 2022 through June 2023. See, e.g., ECF Nos. 24, 32, 50, 60. On June 26, 2023, Falcons' counsel moved to withdraw because Falcons could no longer afford to pay counsel's legal fees. ECF Nos. 62, 63. The Court granted the motion to withdraw and adjourned all deadlines in the matter to enable Falcons to retain new counsel to represent it in this action. ECF No. 64. The Court directed Falcons to retain new

counsel or otherwise submit a status update on its search for new counsel by July 28, 2023. Id. Falcons neither retained new counsel nor submitted a status update by the court-ordered deadline. On August 8, 2023, the Court *sua sponte* extended Falcons' deadline to retain counsel to September 1, 2023. ECF No. 69. The Court warned Falcons that if it did not retain new counsel by that date, "AEye will be granted leave to obtain a Certificate of Default and move for default judgment." Id. Falcons, who by that point was unrepresented, did not receive notice of the Court's August 8 order. ECF No. 95 at ¶ 39.

On September 5, 2023, AEye requested a Certificate of Default, and a Certificate of Default was entered the same day. ECF Nos. 72, 73. Falcons did not receive notice of AEye's request for a Certificate of Default, nor did it receive notice of the entry of the Certificate of Default. ECF No. 95 at ¶ 39. On September 29, 2023, AEye filed a motion for default judgment. ECF Nos. 74, 79. On October 2, 2023, and November 13, 2023, AEye filed affidavits of service, indicating that the motion for default judgment was served on Falcons by mail, but the mail was returned to AEye because it was "refused by recipient." ECF Nos. 80, 81, 82. Four months later, on March 1, 2024, AEye sought permission to serve Falcons by alternate means of service, specifically, e-mail. ECF Nos. 84, 85. Three months later, on June 6, 2024, AEye sent a copy of the motion for default judgment to Falcons via e-mail. ECF No. 95 at ¶ 40.

On June 24, 2024, the Court entered an Order to Show Cause why default judgment should not be entered (ECF No. 86), and a hearing was held on July 24, 2024 (ECF No. 91). Falcons' new counsel from Sichenzia Ross Ference Carmel LLP ("SRFC") entered an appearance on July 24, 2024, and attended the hearing on behalf of Falcons. ECF Nos. 88, 89, 91.

On August 7, 2024, Falcons filed a motion to vacate the Certificate of Default. ECF Nos. 93, 94, 95. AEye filed an opposition to the motion on September 13, 2024 (ECF No. 99), and Falcons filed a reply brief on September 27, 2024 (ECF No. 101). On February 24, 2025, the Court vacated the Certificate of Default, but conditioned vacatur on Falcons posting a bond in the amount of $500,000 by March 28, 2025. ECF No. 102. The Court also directed Falcons to pay AEye's reasonable attorneys' fees and costs related to AEye's motion for a Certificate of Default. Id.

On March 28, 2025, Falcons filed a letter informing the Court that it was unable to post the required bond, that it had no bank accounts or employees, and that it had commenced liquidation proceedings. ECF No. 103. After filing this letter, Falcons "instructed" SRFC "to take no further action with respect to the litigation." ECF No. 123 at ¶ 7. On March 31, 2025, AEye requested that the Court reinstate the Certificate of Default against Falcons or, in the alternative, enter a new Certificate of Default against Falcons. ECF No. 104. On May 2, 2025, the Court ordered the Clerk of Court to reinstate the prior Certificate of Default and directed AEye to either renew its motion for default judgment or file a new motion. ECF No. 105. AEye renewed its motion for default judgment on June 20, 2025. ECF No. 106. In the same motion, AEye also seeks to strike Falcons' answer and affirmative defenses and dismiss its counterclaims. Id. SRFC informed Falcons of the motion for default judgment and "was instructed not to oppose the motion." ECF No. 123 at ¶ 8.

On June 23, 2025, Judge Abrams referred the motion for default judgment to the undersigned for a Report & Recommendation. ECF No. 112. The next day, on June 24, the Court issued an order directing AEye to submit proposed findings of fact and conclusions of law (ECF

No. 113), and AEye filed its proposed findings of fact, conclusions of law, and supporting declarations on July 25, 2025 (see ECF Nos. 115, 116, 117).

On June 1, 2026, the Court scheduled a conference for June 8, 2026 to discuss AEye's inquest submission. ECF No. 121. The next day, SRFC sent an e-mail to Falcons informing it of the conference, and "[i]n response, the sole shareholder of [Falcons] informed SRFC for the first time that he no longer had the authority to act on behalf of the company, including providing directions to SRFC with respect to this litigation, as a liquidator had been formally appointed." ECF No. 123 at ¶¶ 9-10. SRFC filed a motion to withdraw as counsel on June 4, 2026 (ECF No. 122), which the Court granted on June 8, 2026 (ECF No. 126).[2]

## LEGAL STANDARD

### A. Default

Federal Rule of Civil Procedure 55 governs judgments against a party that has failed to plead or otherwise defend itself in an action. Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d Cir. 2011). "Entry of a default judgment is appropriate when the adversary process has been halted because of an essentially unresponsive party." Discover Growth Fund, LLC v. OWC Pharm. Rsch. Corp., No. 20-CV-2857 (AKH), 2023 WL 3301837, at *1 (S.D.N.Y. May 8, 2023) (quoting Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 118 (S.D.N.Y. 2008)); see also Ramos v. CJ Contractor Servs., Inc., No. 23-CV-274 (JLR) (KHP), 2024 WL 3954330, at *1

[2] SRFC also submitted a memorandum in support of its motion to withdraw which included on the last page a request to "stay[ ] the action for thirty (30) days following the entry on the motion to withdraw so Defendant may retain new counsel." ECF No. 124 at 8. Given SRFC's representations that Falcons has initiated liquidation proceedings, a liquidator has been formally appointed, and the sole shareholder of Falcons informed SRFC that he no longer has the authority to act on behalf of the company (see ECF No. 123 at ¶¶ 7, 10), the Court granted SRFC's motion to withdraw as counsel. Although the Court did not rule on the request for a 30-day stay, 30 days from the entry of the order on the motion to withdraw elapsed on July 8, 2026, and new counsel for Falcons has not appeared.

(S.D.N.Y. Aug. 2, 2024), adopted by, 2024 WL 3952643 (S.D.N.Y. Aug. 27, 2024) ("A failure to respond to court orders and otherwise defend, including a failure of a corporate defendant to appear through counsel, justifies entry of default.").

Rule 55 sets forth the two-step procedure for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011); see Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. Mickalis Pawn Shop, 645 F.3d at 128; see also Fed. R. Civ. P. 54(b). Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded. See Mickalis Pawn Shop, 645 F.3d at 137. "In assessing a defaulting defendant's liability for entry of default judgment, a court is bound by the factual allegations in the complaint, which 'must themselves be sufficient to establish a right to relief.'" Doe v. City of New York, No. 20-CV-6393 (PAE) (VF), 2023 WL 2975205, at *5 (S.D.N.Y. Feb. 7, 2023), adopted by, 2023 WL 2975156 (S.D.N.Y. Mar. 3, 2023) (quoting J & J Sports Prods., Inc. v. Boodram, No. 18-CV-5087 (NGG) (SMG), 2019 WL 4463352, at *3 (E.D.N.Y. Sept. 18, 2019)).

"A defendant is always free to ignore the judicial proceedings [and] risk a default judgment[.]" Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982). The consequence is an "admission of all well-pleaded allegations against the defaulting

party." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004). Thus, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." Mickalis Pawn Shop, 645 F.3d at 137 (internal quotation marks and citation omitted).

The essence of Rule 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations. See Assure Glob., LLC v. Anderson, 763 F. Supp. 3d 476, 483 (S.D.N.Y. 2025); see also Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action[.]"). Therefore, the Court is "required to determine whether the [plaintiff]'s allegations are sufficient to establish [the defendant]'s liability as a matter of law[.]" Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). "The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the [non-defaulting party's] favor." WowWee Grp. v. Meirly, No. 18-CV-706 (AJN), 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019).

**B. Damages**

In the event of a defendant's default, the Court accepts as true the well-pleaded allegations in the complaint as to liability, but not for calculating damages. See Mickalis Pawn Shop, 645 F.3d at 128; Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must accept as true all of the factual allegations of the complaint, but the

amount of damages are not deemed true.") (internal quotations marks, citations, and alterations omitted). Thus, even when a defendant has defaulted, a substantive analysis of the alleged claims is required to determine whether the plaintiff may be awarded damages, and proof of damages is required. Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).

Damages must be proven by a plaintiff with sufficient evidence to establish the amount sought "with reasonable certainty." Trustees of Local 813 Ins. Trust Fund v. Rogan Brothers Sanitation Inc., No. 12-CV-6249 (ALC) (HBP), 2018 WL 1587058, at *5 (S.D.N.Y. 2018) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). Such an inquiry requires the court to: (1) "determin[e] the proper rule for calculating damages on . . . a claim," and (2) "assess[ ] plaintiff's evidence supporting the damages to be determined." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

Federal Rule of Civil Procedure 55(b)(2) "allows but does not require" the district court to hold a hearing on the damages amount when conducting an inquest. Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015) ("[T]he court may conduct such hearings or order such references as it deems necessary and proper.") (internal quotation marks and citation omitted). The court need not hold a hearing so long as "a review of detailed affidavits and documentary evidence" establishes a basis for the damages specified in the default judgment. See Cement & Concrete Workers Dist. Counsel Welfare Fund v. Metro Foundation Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012).

### C. Motion to Strike

Federal Rule of Civil Procedure 16(f), permits a district court to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to

obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). The orders authorized by Rule 37(b)(2)(A)(ii)–(vii) include those "striking pleadings in whole or in part," "dismissing the action or proceeding in whole or in part," and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (v), (vi).

In determining whether to impose these sanctions, courts consider "(1) the party's history of noncompliance; (2) the effectiveness of lesser sanctions; (3) whether a warning has been issued regarding imposition of sanctions; and (4) whether imposing lesser sanctions would prejudice the moving party." Arch Ins. Co. v. Sky Materials Corp., No. 17-CV-2829 (CBA) (LB), 2021 WL 966110, at *3 (E.D.N.Y. Jan. 29, 2021), adopted by, 2021 WL 964948 (E.D.N.Y. Mar. 15, 2021). Sanctions are considered "a harsh remedy to be used only in extreme situations, and then only when a court finds 'willfulness, bad faith, or any fault' by the non-compliant litigant." Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (quoting Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990)).

A corporate defendant's failure to comply with a court order to retain counsel is an appropriate basis for striking that defendant's answer and entering default. See Arch Ins. Co., 2021 WL 966110, at *3-4 (collecting cases in which courts struck defendants' answers for failure to comply with orders to retain and appear through counsel); Bratta v. Tramp, No. 08-CV-4073 (JFB) (ETB), 2009 WL 10708936, at *2 (E.D.N.Y. Nov. 30, 2009) (striking answer and entering default against corporate defendant that failed to comply with two court orders to obtain counsel). Similarly, the failure of a defendant—corporate or individual—to comply with a court's scheduling order and meaningfully participate in the defense of the action is also grounds for striking the answer and entering default against that defendant. See 2W Prod. Corp. v. Y & P Wholesale, Inc., No. 07-CV-423 (ENV) (MDG), 2009 WL 29311, at *4-5 (E.D.N.Y. Jan. 5.

2009), adopted by, 2009 WL 455292 (E.D.N.Y. Feb. 23, 2009) (recommending that answer be stricken where defendants "failed to participate in a meaningful fashion" and failed to comply with three court orders); Bratta, 2009 WL 10708936, at *2-3 (striking answer of and entering default against individual defendant who failed to defend).

## DISCUSSION

### A. Jurisdiction

As a threshold matter, the jurisdictional prerequisites are satisfied. Beginning with subject-matter jurisdiction, the party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists. See Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009). In this action raising a single state-law claim, AEye invokes federal jurisdiction on the basis of diversity under 28 U.S.C. § 1332. See ECF No. 1 at ¶¶ 10-11. A federal court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a).

To determine whether subject-matter jurisdiction exists based on diversity of citizenship, a court must first determine the citizenship of the parties involved. Subsection (c)(1) of Section 1332 details the standards for determining the citizenship of a corporate party, and provides that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

The complaint alleges that AEye is a "public company incorporated under the laws of Delaware" with its principal place of business in California. ECF No. 1 at ¶ 6. AEye is therefore a citizen of Delaware and California. Falcons is a corporation organized in the United Arab

Emirates ("UAE") with its principal place of business in the United Kingdom.[3] Id. at ¶¶ 7-8. But that Falcons is a foreign corporation does not affect the applicability of Section 1332(c), because Section 1332(c) applies to both foreign and domestic corporations. See JS Barkats PLLC v. Blue Sphere Corp., No. 16-CV-8404 (RA), 2017 WL 2930935, at *3 n.4 (S.D.N.Y. July 10, 2017) (explaining that "[i]n 2011, Congress amended Section 1332(c) to clarify that a corporation is a citizen of 'every State and foreign state' where it is incorporated or has its principal place of business, thus recognizing the possibility of dual citizenship for alien corporations"); Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC, 692 F.3d 42, 51 (2d Cir. 2012) ("Congress has [ ] amended section 1332(c) to include 'foreign state' in the dual citizenship provision."). Falcons is thus a citizen of the UAE and the United Kingdom. Because the amount in controversy is at least $5,000,000 (ECF No. 1 at ¶ 11), the Court has subject-matter jurisdiction.

The Court also has personal jurisdiction over Falcons, "a necessary prerequisite to entry of a default judgment." See Reilly v. Plot Commerce, No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016), adopted by, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (citation omitted). The complaint alleges that Falcons consented to this Court's exercise of

---

[3] AEye makes this allegation on information and belief, and it provides the factual detail to support its belief. AEye alleges that Falcons "identified an address in the UK as the address for notice to be received under the Subscription Agreement and that [Falcons] also identified an address in the UK as the address for the delivery of shares that are the subject of the Subscription Agreement." ECF No. 1 at ¶ 8; cf. Coward v. Nat'l R.R. Passenger Corp., 757 F. Supp. 3d 297, 299 (E.D.N.Y. 2024) (explaining that "[i]f there were an adequate basis for the 'upon information and belief' allegation that [the individual] is the sole member of [defendant limited liability company], plaintiff would have properly invoked diversity jurisdiction"); Mukamal v. Onexxx Prod. & Expl. Corp., No. 25-CV-3493 (PKC), 2025 WL 1617135, at *1 (S.D.N.Y. June 6, 2025) ("Some courts also have concluded that citizenship allegations made upon information and belief, *without adequate supporting allegations*, are insufficient to allege diversity jurisdiction.") (emphasis added).

personal jurisdiction by entering into the Subscription Agreement, which required the parties to "submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York." ECF No. 1 at ¶ 12. This clause is sufficient to establish personal jurisdiction over Falcons. See Hateks Hatay Tekstil Isletmeleri A.S. v. Unique Boutique Home Inc., No. 21-CV-10548 (AKH), 2022 WL 1261779, at *3 (S.D.N.Y. Apr. 28, 2022) (finding personal jurisdiction over defendant where a forum-selection clause stipulated "that the parties would subject themselves to the jurisdiction of a District Court in the Southern District of New York"); Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Triumph Mar. Ltd., No. 18-CV-8615 (JPO), 2019 WL 6318428, at *2 (S.D.N.Y. Nov. 26, 2019) (concluding that there was personal jurisdiction over defendants "by virtue of a contractual clause in which they agreed to 'submit[ ] to the jurisdiction' of this Court").

**B. Liability**[4]

Under New York law, the allegations in the complaint suffice to establish Falcons' liability for breach of contract. "To state a claim for breach of contract under New York law, a plaintiff must allege four elements: (1) the existence of a contract; (2) the performance of that contract by one party; (3) the breach of that contract by the other party; and (4) damages." Lenard v. Design Studio, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000)).

[4] In light of Falcons' default, the Court accepts as true the well-pleaded allegations in the complaint, with the exception of those relating to damages. See, e.g., Greyhound Exhibitgroup, Inc. v. E.L. U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.") (citations omitted).

First, AEye has adequately pled the existence of a contract. The complaint alleges that on February 17, 2021, Falcons entered into an agreement to purchase 500,000 shares of AEye's Class A common stock at $10 per share for a total of $5,000,000. ECF No. 1 at ¶ 26. The Subscription Agreement was provided to the Court. See ECF Nos. 109-1, 117-1. Consistent with the allegations in the complaint, Falcons agreed to purchase 500,000 shares of AEye's common stock at $10 per share. ECF No. 117-1 at 2, 26.

Second, AEye has alleged that it performed under the Subscription Agreement, explicitly stating that "[a]ll conditions obligating [Falcons] to consummate the Closing were satisfied." ECF No. 1 at ¶ 37. Under the Subscription Agreement, CF III (now AEye) was required to give Falcons seven business days' notice specifying the anticipated date of the merger's closing and providing Falcons with wire instructions, and one business day before closing, Falcons was to deliver $5,000,000 to CF III by 4:00 p.m. Id. at ¶¶ 29-30. To that end, the complaint alleges that on August 5, 2021, as required under the Subscription Agreement, CF III sent Daniel Cookson, the director of Falcons, and Matt Novak, the managing partner of Falcons, the notice of closing indicating that the anticipated closing date was on Monday, August 16, 2021, thereby requiring Falcons to deliver the funds by the preceding business day, Friday, August 13, 2021. Id. at ¶¶ 34-35. The Subscription Agreement also had the following conditions: the closing of the merger; receipt of requisite stockholder approvals; and the continued qualification of the common stock for offering. Id. at ¶¶ 27-28.

Third, AEye has alleged a breach by Falcons of its obligation under the Subscription Agreement. AEye asserts that Falcons never wired the $5,000,000 specified in the Subscription Agreement after the required notice was provided by AEye. Id. at ¶¶ 34-35, 37-38. Finally, AEye has pled that it suffered damages as a result of Falcons' breach. Specifically, AEye alleges that it

was harmed in the amount of $5,000,000, which is the purchase price for the 500,000 shares of Class A common stock. Id. at ¶¶ 51-52, 54.

Collectively, these allegations suffice to plead a valid breach-of-contract claim against Falcons under New York law. Thus, I recommend that default judgment be entered as against Falcons on AEye's breach-of-contract claim.

**C. Motion to Strike**

AEye also moves to strike Falcons' answer and affirmative defenses and dismiss its counterclaims. ECF No. 107 at 18-22. Although Falcons filed an answer to the complaint with affirmative defenses and counterclaims on October 10, 2022 (ECF No. 22), it later failed to retain counsel, failed to abide by the Court's order directing it to retain counsel (see ECF No. 102), and failed to otherwise defend this action.

It is well-established that "[w]here a corporate defendant has been ordered to retain counsel and fails to do so, striking a defendant's answer, including its counterclaims, is an appropriate sanction." La Saltena S.A.U. v. Ercomar Imports Internacional Corp., No. 21-CV-4675 (KAM) (LB), 2024 WL 2319622, at *3 (E.D.N.Y. May 22, 2024) (citation omitted); see Yu v. Shanghai Dumpling Inc., No. 19-CV-7601 (ALC) (VF), 2022 WL 4632817, at *4 (S.D.N.Y. Aug. 19, 2022), adopted by, 2022 WL 4661911 (S.D.N.Y. Sept. 29, 2022) (explaining that a "[corporate] defendant's failure to comply with the court's order to retain counsel is an appropriate basis for striking that defendant's answer and entering default"); Team Air Express, Inc. v. A. Heffco Techs., Inc., No. 06-CV-2742 (NG) (CLP), 2008 WL 4790469, at *2 (E.D.N.Y. Jan. 7, 2008) (recommending that plaintiff's motion for default be granted and that corporate defendant's answer and counterclaim be stricken "[g]iven defendant's failure to obtain new counsel within the time ordered by the Court and the inability of a corporation to proceed pro se

in federal court"). Further, "[t]he failure of a defendant to meaningfully participate in the defense of the action" is also grounds for striking the answer and entering default against that defendant. Yu, 2022 WL 4632817, at *4; see Bratta, 2009 WL 10708936, at *2-3 (striking answer and entering default against individual defendant who failed to defend); 2W Prod. Corp., 2009 WL 29311, at *4-5 (recommending that answer be stricken where defendants "failed to participate in a meaningful fashion" and failed to comply with three court orders).

Even where a defendant "has alleged several potentially meritorious affirmative defenses," those defenses should be stricken if the defendant "has repeatedly failed to appear and defend th[e] action." See Lightning 1179 LLC v. Rodriguez, No. 17-CV-6311 (MKB) (ST), 2020 WL 7000902, at *5 (E.D.N.Y. Sept. 18, 2020), adopted by, 2020 WL 6042000 (E.D.N.Y. Oct. 13, 2020); Rahman v. Red Chili Indian Cafe, Inc., No. 17-CV-5156 (RA), 2019 WL 6619350, at *2 (S.D.N.Y. Dec. 5, 2019) (striking defendant's answer and affirmative defenses and granting default judgment); Envtl. Servs., Inc. v. Recycle Green Servs., Inc., No. 13-CV-4568 (JFB) (ARL), 2015 WL 13758426, at *2 (E.D.N.Y. June 9, 2015) (same).

Here, Falcons has twice failed to defend this action, including after this Court granted its motion to vacate the first Certificate of Default. See ECF No. 102. On June 26, 2023, Falcons' counsel moved to withdraw his representation because Falcons could no longer afford to pay its legal fees (ECF Nos. 62, 63), and the Court granted the motion to withdraw and adjourned all deadlines in the matter to enable Falcons to retain new counsel to represent it in this action (ECF No. 64). The Court directed Falcons to retain new counsel or otherwise submit a status update on its search for new counsel by July 28, 2023. ECF No. 64. Falcons neither retained new counsel nor submitted a status update by the court-ordered deadline.

On September 5, 2023, AEye requested that a Certificate of Default be entered, and a Certificate of Default was entered the same day. ECF Nos. 72, 73. More than 10 months later, Falcons reappeared on July 24, 2024 (ECF Nos. 88, 89) and subsequently moved to vacate the Certificate of Default (ECF No. 93). On February 24, 2025, the Court granted Falcons' motion and vacated the Certificate of Default, conditioning vacatur on the posting of a bond by Falcons in the amount of $500,000 by March 28, 2025. ECF No. 102. The Court also directed Falcons to pay AEye's reasonable attorneys' fees and costs related to AEye's motions for a Certificate of Default and default judgment. Id. at 20-21. To date, Falcons' last appearance in this action was more than one year ago, on March 28, 2025, via a letter by counsel stating that Falcons was unable to post the bond ordered by the Court (see id.), that it had no bank accounts or employees, and that it had commenced liquidation proceedings the previous day (ECF No. 103).

Falcons' repeated failure to comply with the Court's orders and otherwise defend the action warrants striking Falcons' answer and dismissing its counterclaims. See Lightning 1179 LLC, 2020 WL 7000902, at *5, 8 (granting motion for default and striking defendant's answer where defendant defaulted, successfully vacated the default, and thereafter failed to appear and defend the case); Phi Aviation, LLC v. New York Helicopter Charter Inc., No. 25-CV-617 (ALC) (OTW), 2026 WL 789514, at *1 (S.D.N.Y. Jan. 16, 2026) (granting motion to strike defendant's answer and dismiss counterclaims where "[d]efendant's counsel withdrew on October 27, 2025, after representing that his client intended to abandon its defenses and counterclaims, no attorney [ ] subsequently appeared for [d]efendant, and [d]efendant [ ] made no response to [p]laintiff's motion to strike").

Moreover, no lesser sanction would be effective and a lesser sanction would prejudice AEye. AEye commenced this case in June 2022, more than four years ago. See ECF No. 1.

Falcons also previously failed to defend against AEye's claim, necessitating the entry of a Certificate of Default and the expenditure of time and resources by AEye in attempting to obtain a default judgment. Despite reappearing and assuring the Court that it was "ready to defend and prosecute the claims in this action" (ECF No. 94 at 18), Falcons backtracked on its representations. After AEye went through the expense of opposing the motion to vacate the default, Falcons again disappeared and has since failed to participate in this case since March 28, 2025 (see ECF No. 103), necessitating AEye to once again move for default. Under these circumstances, "issuing further orders or imposing lesser sanctions would serve no purpose, and would prejudice" AEye by continuing to delay resolution of this long-standing action. See Arch Ins. Co., 2021 WL 966110, at *4 (citation omitted).

I therefore recommend that Falcons' answer and affirmative defenses be stricken and its counterclaims be dismissed.

**D. Damages**

AEye seeks damages in the amount of $5,000,000 for the 500,000 shares of Class A common stock that Falcons agreed to purchase at $10 per share pursuant to the Subscription Agreement, plus statutory pre-judgment interest of 9% per annum. ECF No. 115 at ¶¶ 89-90, 96. AEye also seeks attorney's fees in the amount of $53,888.25, incurred in connection with obtaining the entry of default and filing the first default judgment motion. Id. at ¶¶ 54, 83. As discussed below, AEye has established with reasonable certainty the amount of damages owed under the Subscription Agreement.

*1. Damages for Breach of Contract*

Pursuant to New York law, a successful plaintiff in a breach-of-contract action is "entitled to damages in the amount necessary to put the plaintiff in the same economic position

he would have been in had the defendant fulfilled his contract."[5] Am. Jewish Comm. v. Berman, No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *5 (S.D.N.Y. June 15, 2016) (internal quotation marks and citation omitted). "[W]hen the non-breaching party seeks only to recover money that the breaching party agreed to pay under the contract, the damages sought are general damages." Int'l Cards Co., Ltd. v. MasterCard Int'l Inc., No. 13-CV-2576 (LGS), 2016 WL 7009016, at *3 (S.D.N.Y. Nov. 29, 2016) (quoting Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 109 (2d Cir. 2007)).

"In some circumstances, '[s]pecific performance is an appropriate remedy in a breach of contract claim.'" Wells Fargo Bank, N.A. v. Bank of Am., N.A., No. 11-CV-4062 (JPO), 2013 WL 372149, at *8 (S.D.N.Y. Jan. 31, 2013) (quoting Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 348 (S.D.N.Y. 2009)). In particular, under New York law, which applies here, "a party can be compelled to perform its contractual obligations if (1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." Flawless Style LLC v. Saadia Grp., LLC, No. 23-CV-2354 (LTS), 2026 WL 309192, at *2 (S.D.N.Y. Feb. 5, 2026) (quoting Saint Laurie Ltd. v. Yves Saint Laurent Am., Inc., No. 13-CV-6857 (DAB), 2015 WL 12991205, at *4 (S.D.N.Y. Mar. 27, 2015)). Before specific performance may be ordered, "remedies at law first should be determined to be incomplete and inadequate to accomplish substantial justice." Leasco Corp. v. Taussig, 473 F.2d 777, 786 (2d Cir. 1973) (citations omitted); see also Netherby Ltd. v. Jones Apparel Group,

[5] New York law applies because the Subscription Agreement states that it "shall be governed by, and construed in accordance with, the laws of the state of New York, without regard to the principles of conflicts of laws that would otherwise require the application of the law of any other state." ECF No. 117-1 at ¶ 10(j) (capitalization omitted).

Inc., No. 04-CV-7028 (GEL), 2007 WL 1041648, *19 (S.D.N.Y. Apr. 5, 2007) ("Legal remedies may be found inadequate where any calculation of damages would be speculative[.]"). Ultimately, "[t]he decision to order specific performance lies within the sound discretion of the district court." River Point Towers Co-op., Inc. v. Am. DG, Inc., No. 11-CV-6645 (JPO), 2012 WL 847322, at *3 (S.D.N.Y. Mar. 13, 2012).

Here, AEye argues that specific performance of Falcons' obligation under the Subscription Agreement is the appropriate remedy, relying in part on a provision in the Subscription Agreement which states that either party to the agreement can seek specific performance in the event of a breach. See ECF No. 115 at ¶ 14 (citing Section 10 of Subscription Agreement). AEye appended a copy of the Subscription Agreement as an exhibit to the declaration of Andrew Hughes ("Hughes"), senior vice president and general counsel of AEye. See ECF No. 117 at ¶ 1; ECF No. 117-1. Hughes' sworn declaration attests that Falcons failed to deliver the $5,000,000 in purchasing funds on August 13, 2021, and Falcons had not delivered the funds as of July 25, 2025. ECF No. 117 at ¶¶ 23, 33. Section 10 of the Subscription Agreement, titled "Specific Performance," states that the parties agree that "irreparable damage may occur in the event that any of the provisions of [the] Subscription Agreement were not performed" and "the parties shall be entitled to seek equitable relief, . . . to enforce specifically the terms and provisions of [the] Subscription Agreement" in addition to seeking "any other remedy . . . at law, in equity, in contract, in tort or otherwise." ECF No. 117-1 at ¶ 10(i). AEye thus seeks that Falcons be compelled to deliver the $5,000,000 purchase price for the 500,000 shares. ECF No. 115 at ¶¶ 89-91.

But AEye has not shown that Falcons is able to perform its obligations, or that AEye has no adequate remedy at law, as would be required for an award of specific performance. See

Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 262 (2d Cir. 2002) ("[B]efore the extraordinary equitable remedy of specific performance may be ordered, the party seeking relief must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice.") (internal quotation marks and citations omitted); World Gold Tr. Servs., LLC v. GoldCoin Devs. Grp. LP, No. 20-CV-4667 (JGK), 2021 WL 4134681, at *4 (S.D.N.Y. Sept. 10, 2021) (explaining that under New York law, "[s]pecific performance is unavailable in a contract action unless there is no adequate remedy at law"); see also Simon v. Electrospace Corp., 28 N.Y.2d 136, 145-46 (1971) (noting that specific performance is not appropriate where the claim involves publicly traded stock); Edge Grp. WAICCS LLC v. Sapir Grp. LLC, 705 F. Supp. 2d 304, 319 (S.D.N.Y. 2010) ("[I]f a party cannot perform at the time of the application for specific performance, that fact will preclude the grant of specific performance.") (internal quotation marks and citations omitted).

Rather, money damages in the amount of $5,000,000 are proper, as that amount would put AEye in the same economic position it would have been in had Falcons performed its obligation under the Subscription Agreement. See Elevation Health, LLC v. Sun Grp. Partners LLC, No. 22-CV-10155 (PAE) (VF), 2025 WL 763983, at *3-4 (S.D.N.Y. Jan. 31, 2025), adopted as modified by, 2025 WL 586681 (S.D.N.Y. Feb. 24, 2025) (awarding plaintiff damages equivalent to the principial amount defendant owed under breached promissory note and the exit fee); Hateks Hatay Tekstil Isletmeleri A.S., 2022 WL 1261779, at *4 (concluding plaintiff was entitled to $840,000 in damages where plaintiff provided a copy of the relevant agreement setting forth defendants' obligations to pay $840,000, defendants defaulted on the first payment and failed to cure within the cure period, and under the acceleration clause, the full unpaid debt of $840,000 became immediately due and payable upon the end of the cure period); Am.

Steamship Owners Mut. Prot. & Indem. Ass'n, Inc., 2019 WL 6318428, at *3 ("[I]t is clear that [the plaintiff] is entitled to $29,654.79 in unpaid premiums and $350,074.63 in unreimbursed outstanding wages, repatriation expenses, and incidental costs that were evident on the face of the complaint.").

Accordingly, AEye is entitled to $5,000,000 in damages for Falcons' breach of the Subscription Agreement.

*2. Pre-Judgment Interest*

AEye also requests pre-judgment interest at the statutory rate of 9% per annum. ECF No. 115 at ¶ 96. Pursuant to New York choice-of-law principles, "the allowance of prejudgment interest is controlled by the law of the state whose law determined liability on the main claim." Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 147 (2d Cir. 2008) (citation omitted). And "[u]nder New York law, 'a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right.'" Midwood Junction v. Puerto del Sol Int'l Inv., S.A., No. 15-CV-5181 (RA) (SN), 2016 WL 8905357, at *4 (S.D.N.Y. Dec. 5, 2016), adopted as modified by, 2017 WL 1857248 (May 4, 2017) (quoting U.S. Naval Inst. v. Charter Comm'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991)); Am. Empire Surplus Lines Ins. Co. v. B & B Iron Works Corp., No. 18-CV-6384 (WFK) (ST), 2022 WL 4085732, at *4 (E.D.N.Y. Aug. 19, 2022), adopted by, 2022 WL 4079590 (E.D.N.Y. Sept. 6, 2022) ("Under New York law, the awarding of this interest is generally mandatory upon a sum awarded because of a breach of performance of a contract[.]") (internal quotation marks and citation omitted); see also N.Y. C.P.L.R. § 5001(a) ("Interest shall be recovered upon a sum awarded because of a breach of performance of a contract[.]")."In breach of contract cases, prejudgment interest is awarded from

the date of the breach." Bison Capital Corp. v. ATP Oil & Gas Corp., 884 F. Supp. 2d 57, 59 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

Here, New York law applies to determine Falcons' liability under the Subscription Agreement. Accordingly, AEye is entitled to pre-judgment interest at the rate of 9% per annum. That figure should be calculated from the day after Falcons' breach, August 14, 2021, until the entry of judgment in this case. See ECF No. 115 at ¶ 96; Hateks Hatay Tekstil Isletmeleri A.S., 2022 WL 1261779, at *4 (explaining that plaintiffs are entitled to "prejudgment interest calculated at the New York statutory rate of 9 percent per year and starting from [the date of defendants' breach] to the date of entry of this judgment").

*3. Attorney's Fees*

AEye also seeks to recover $53,888.25 in attorney's fees incurred in obtaining the first Certificate of Default and filing the first default judgment motion. ECF No. 115 at ¶¶ 54, 83. AEye does not seek any costs. On February 24, 2025, the Court directed Falcons "to pay AEye's reasonable attorneys' fees and costs related to AEye's motions for a Certificate of Default and default judgment." ECF No. 102 at 21. AEye is thus entitled to its reasonable attorney's fees related to obtaining the entry of default and filing the default judgment motion.

To calculate an award of attorney's fees, courts in this Circuit determine the "reasonable hourly rate," defined as "the rate a paying client would be willing to pay," and multiply that rate by the number of hours reasonably expended in prosecuting the action. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 186, 190 (2d Cir. 2008). Often, this calculation is referred to as the lodestar calculation. Id. at 183. To be reasonable, the attorney's rate must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

reputation." Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (citation omitted, alteration in original). Additionally, in assessing whether the number of hours billed by the attorney is reasonable, courts consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted). The prevailing party bears the burden to produce "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) (citation omitted); N.Y. Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) (same). Here, Aeye has submitted contemporaneous billing records. ECF No. 116-8.

AEye was represented by attorneys from Sher Tremonte, and it seeks compensation for work by five professionals: (1) partners Erica Wolff ("Wolff") and Kimo Peluso ("Peluso"); (2) associate Robert C. Penn Jr. ("Penn"); and (3) former paralegals Inna Zheng ("Zheng") and Chinoia Weir ("Weir"). ECF No. 115 at ¶¶ 48-53. Beginning with the hourly rates, Peluso seeks an hourly rate of $520 for work performed between August 2023 and September 2023. ECF No. 116 at ¶¶ 31, 33; ECF No. 116-8 at 2-3. Peluso is a partner at Sher Tremonte and a graduate of Harvard Law School, with 25 years of experience practicing law. ECF No. 116 at ¶ 33. Next, Wolff seeks an hourly rate of $487.50 for work performed between August 2023 and July 2024. Id. at ¶¶ 31, 34; ECF No. 116-8 at 2-4. She is also a partner at Sher Tremonte, who has practiced law for over 15 years. ECF No. 116 at ¶¶ 31, 34. Penn, an associate, seeks an hourly rate of $422.50 for work performed between August 2023 and June 2024. ECF No. 116 at ¶¶ 31, 35; ECF No. 116-8 at 2-4. Penn has been at Sher Tremonte since 2021, and prior to that he practiced law for four years at another firm. ECF No. 116 at ¶ 35. The hourly rate sought for former

paralegals Zheng and Weir is $162.50, for work performed between September 2023 and June 2024. Id. at ¶¶ 31, 36; ECF No. 116-8 at 2-3.

All of the hourly rates requested are reasonable. Beginning with the hourly rates for the two partners, Peluso and Wolff, their rates are well within the range typically awarded in this District to practitioners of similar experience in actions of similar complexity to this one. See Elevation Health, 2025 WL 763983, at *6 (awarding rate of $550 to partner in breach-of-contract case); USA Staffing Servs., LLC v. YDC, Inc., No. 23-CV-8613 (LGS) (VF), 2025 WL 3162099, at *6 (S.D.N.Y. Sept. 5, 2025), adopted by, 2025 WL 2835633 (S.D.N.Y. Oct. 7, 2025) (awarding partner rate of $575 for work performed between September 2023 and December 2024 and rate of $650 for work performed after January 2025); Artnet Worldwide Corp. Inc. v. Gabriel Gruber, No. 21-CV-10459 (JHR) (KHP), 2024 WL 5245562, at *4-5 (S.D.N.Y. July 22, 2024) (awarding rates of $520 and later $550 to counsel on a breach-of-contract case); KCG Holdings, Inc. v. Khandekar, No. 17-CV-3533 (AJN) (GWG), 2020 WL 7053229, at *5 (S.D.N.Y. Dec. 2, 2020) ("A number of cases have commonly found partner rates in the range of $350 to $650 per hour to be reasonable in breach of contract suits.").

The hourly rate of $422.50 for Penn, an associate with at least eight years of experience, is also reasonable. See Capitol Recs., LLC v. ReDigi Inc., No. 12-CV-95 (RJS), 2022 WL 3348385, at *3 (S.D.N.Y. Aug. 12, 2022) ("Generally, courts in this District have approved billing rates for law firm associates in the range of $200 to $450 per hour depending on the associate's experience.") (internal quotation marks and citation omitted); Dweck v. Amadi, No. 10-CV-2577 (RMB) (HBP), 2012 WL 3020029, at *4 n.5 (S.D.N.Y. July 6, 2012) (collecting cases approving rates between $180 and $440 per hour for associates). Finally, the hourly rate of $162.50 for the two paralegals is reasonable. See Profex, Inc. v. Westchester Fire Ins. Co., No.

22-CV-15 (NSR) (JCM), 2026 WL 789519, at *6 (S.D.N.Y. Jan. 27, 2026), adopted sub nom. by, United States of America, F/U/B/O Profex, Inc. v. Liberty Mutual Ins. Co., 2026 WL 1179695 (S.D.N.Y. Apr. 30, 2026) (explaining that "[c]ourts in this district have found hourly rates between $100 and $200 reasonable for paralegals" and collecting cases); 1979 Fam. Tr. Licensor, LLC v. Darji, No. 19-CV-4389 (VEC), 2020 WL 9596279, at *1 (S.D.N.Y. Sept. 30, 2020) (awarding rate of $175 to paralegals).

Turning to the reasonableness of the hours expended, AEye is seeking fees for time spent in connection with preparing a proposed certificate of default and accompanying declaration (ECF Nos. 71, 72), a 26-page memorandum of law in support of the default judgment motion (ECF Nos. 74, 75), two accompanying declarations (ECF Nos. 76, 77), a two-page proposed order to show cause (ECF No. 78), and a proposed default judgment (ECF No. 79). Counsel's contemporaneous time records identify, for each timekeeper, the hours expended on each task with a description of the task performed. ECF No. 116-8. Those time records indicate that a total of 140.4 hours of time were expended in connection with obtaining the entry of default and filing the default judgment motion. Id. at 4; see also ECF No. 116 at ¶ 37. Collectively, the three attorneys on the matter (Peluso, Wolff, and Penn) billed 111.2 hours of time, and the two paralegals billed 29.2 hours. ECF No. 116-8.

"The court's role is not to determine whether the number of hours worked by [plaintiff's] attorneys represents the most efficient use of resources, but rather whether the number is reasonable." Antetokounmpo v. Searcy, No. 20-CV-5055 (JGK) (KHP), 2021 WL 3233417, at *6 (S.D.N.Y. May 20, 2021) (citation omitted). Here, the number of hours expended by the three attorneys on the matter for obtaining a certificate of default and preparing a default judgment

motion (111.2 hours) was excessive, as was the time (29.2 hours) expended by the two paralegals.

Beginning with the memorandum of law filed in support of the default judgment motion, the memorandum did not raise any complex legal or factual issues. The memorandum itself was only 26 pages—inclusive of the cover page, table of contents, and table of authorities—and the only issues raised were whether default judgment should be entered and Falcons' answer and counterclaims stricken. See ECF No. 75. On this straightforward motion, Wolff expended 29.8 hours of time, Penn expended 79.1 hours of time, and Peluso billed 2.3 hours of time. See ECF No. 116-8. Despite the simplicity of the motion, Penn spent 55.1 hours of time drafting, reviewing comments to, and revising the opening memorandum of law and accompanying declarations, including 13.8 hours of time on "research." Id. at 2-3. But such a straightforward memorandum of law, with a factual background section that merely required recounting the facts in the complaint because Falcons was in default, should not have required over 50 hours of time to prepare. See Canon Fin. Servs., Inc. v. Ambulatory Surgery Centers, LLC, No. 23-CV-1568 (PKC) (JRC), 2025 WL 3451846, at *12 (E.D.N.Y. Sept. 5, 2025) (concluding that 26 hours spent drafting motion for default judgment was excessive "in light of the work completed"); LG Cap. Funding, LLC v. AIM Expl., Inc., No. 17-CV-3118 (KMW) (SN), 2021 WL 4482654, at *7 (S.D.N.Y. Apr. 20, 2021), adopted by, 2021 WL 4482148 (S.D.N.Y. Sept. 30, 2021) (finding that "27 hours is an unreasonable amount of time to prepare default judgment papers"); cf. Wright v. Miah, No. 22-CV-4132 (CBA) (JRC), 2023 WL 6219435, at *15 (E.D.N.Y. Sept. 7, 2023), adopted by, 2023 WL 6216541 (E.D.N.Y. Sept. 25, 2023) (concluding that it was "reasonable" for counsel to spend "[a]pproximately 12.4 hours . . . drafting and revising plaintiff's motion for default judgment"). Likewise, the declarations filed in support of the

motion summarized the history of the action and attached documents previously filed on the docket or exchanged between the parties, which should have been easily accessible to Penn. Penn also billed 8.8 hours to "[confer]ring," calling, or e-mailing with attorneys or paralegals regarding the motion for default. ECF No. 116-8 at 2-4.

Further, despite Penn, an experienced associate, having spent over 50 hours on the memorandum of law, Wolff, a partner, also billed 19 hours to preparing the same memorandum, including 6.9 hours of time on "research." Id. at 2-3. Legal research is a task more suitable for junior lawyers and not a seasoned litigator like Wolff. See E.V. v. United Healthcare Oxford, No. 22-CV-2855 (VM), 2024 WL 3534405, at *5 (S.D.N.Y. July 25, 2024) (reducing fee award where "[lead counsel] billed for 66.8 [hours], including for tasks like legal research and preparing initial drafts of case documents that, in the Court's experience, are suitable tasks for lawyers more junior to [lead counsel]").

Penn also billed 4.3 hours to preparing and filing the request for entry of default, preparing the proposed judgment, and conferring about the proposed judgment (see ECF No. 116-8 at 2-3), all of which are administrative tasks that should have been delegated to a more junior attorney or paralegal. See Wei Yan Yan v. 520 Asian Rest. Corp., No. 13-CV-2417 (KNF), 2015 WL 1026611, at *10 (S.D.N.Y. Mar. 9, 2015) (explaining that "it was unreasonable for a senior attorney" to bill for "administrative tasks," like filing a "satisfaction of judgment'"). Penn billed an additional 11 hours to issues related to service of the motion for default and seeking leave to effectuate service by alternative means. ECF No. 116-8 at 3-4.

Portions of the 29.2 hours billed by paralegals Zheng and Weir are also excessive. See Shim-Larkin v. City of New York, No. 16-CV-6099 (AJN) (KNF), 2020 WL 86810, at *2 (S.D.N.Y. Jan. 7, 2020), objections overruled by, 2020 WL 5758751 (S.D.N.Y. Sept. 28, 2020)

("A court may draw upon its own knowledge and experience when assessing the reasonableness of an attorney's fee application."). For example, Weir billed 7.9 hours to "[p]repare motion for default judg[ment]" and 2.2 hours to "[c]onfer with I. Zheng regarding preparation of motion for default judgment." ECF No. 116-8 at 3. It is unclear why "preparation" of the motion would have taken nearly 8 hours, and nor is it clear why more than 2 hours were needed to confer about that preparation. Additionally, Zheng spent 1.8 hours "filing [a] supplemental declaration" and 1.8 hours "mailing courtesy copies" of the default judgment motion to Falcons. Id. at 3-4. But neither of those tasks should have required that amount of time.

In other cases, where highly skilled attorneys have performed work on straightforward motions, such as the motion for default judgment for which fees are sought here, courts in this Circuit have baulked at awarding hours that are far lower than the 140.4 hours requested here. See GlobeRunners Inc. v. Env't Packaging Techs. Holdings, Inc., No. 18-CV-4939 (JGK) (BCM), 2020 WL 1865536, *6 (S.D.N.Y. Mar. 6, 2020), adopted by, 2020 WL 1862565 (S.D.N.Y. Apr. 14, 2020) (concluding that 80.9 hours in breach-of-contract case where defendant defaulted was "excessive," given the "straightforward nature" of the case and "plaintiff's highly-experienced attorneys"); Krasnyi Oktyabr, Inc. v. Royal Sweet Bakery, Inc., No. 05-CV-3021 (DGT), 2007 WL 2815808, at *8 (E.D.N.Y. Sept. 25, 2007) (finding it "unreasonable" for counsel to spend 62 hours "preparing the motion for default judgment and damages application"); Lee v. Hudson River Cafe, Corp., No. 12-CV-463 (GBD) (FM), 2016 WL 11482345, at *7 (S.D.N.Y. Aug. 15, 2016), adopted as modified by, 2016 WL 5092591 (S.D.N.Y. Sept. 19, 2016) (finding it "excessive" that "counsel spent 56.65 hours drafting, preparing, and filing their motion for a default judgment and their largely duplicative inquest papers"); see also Abularach v. High Wing Aviation LLC, No. 22-CV-1266 (MKB), 2025 WL

405986, at *1, 8 (E.D.N.Y. Feb. 5, 2025) (concluding that 54.4 hours was an "excessive" amount of time to spend on defending a motion to vacate default judgment in a breach-of-contract case).

"A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks and citations omitted). In light of the straightforward nature of the work performed and given the experience of the attorneys here (which should have produced greater efficiency in completing the work), the hours requested are excessive and a 50% reduction in those hours is appropriate. See Top Jet Enters., Ltd. v. Kulowiec, No. 21-MC-789 (RA) (KHP), 2022 WL 1184245, at *5-6 (S.D.N.Y. Apr. 21, 2022) (concluding that "a 75% reduction in total hours [wa]s appropriate" in part because the billing was "patently excessive" and the "Court t[oo]k[ ] into account its own knowledge about the amount of time that generally is appropriate to draft and prepare [the] motion"); Pall Corp. v. 3M Purification Inc., No. 03-CV-92 (RRM) (ETB), 2012 WL 1979297, at *7 (E.D.N.Y. June 1, 2012) (reducing hours billed by "approximately seventy-five percent"); J.R. v. N.Y.C. Dep't of Educ., No. 19-CV-11783 (RA), 2021 WL 3406370, at *5 (S.D.N.Y. Aug. 4, 2021) ("Courts in this Circuit routinely reduce hours by up to fifty percent in instances where counsel bills for excessive or unnecessary hours worked.") (collecting cases). Such a reduction yields a total number of attorney hours (55.6) more in line with the number of hours deemed reasonable by other Courts for similar work in obtaining a default judgment. See Bank of Am., N.A. v. Brooklyn Carpet Exch., Inc., No. 15-CV-5981 (LGS) (DF), 2016 WL 8674686, at *10 (S.D.N.Y. May 13, 2016), adopted by, 2016 WL 3566237 (S.D.N.Y. June 27, 2016) (collecting cases concerning reasonable number of hours expended in actions for breach of contract in which defendant defaulted and finding acceptable range of 13.3 hours to 20.6 hours); see also Tatintsian

v. Vorotyntsev, No. 16-CV-7203 (GHW), 2020 WL 2836718, at *6 (S.D.N.Y. June 1, 2020) (finding 47.5 hours expended on moving for default judgment and opposing motion to vacate default judgment reasonable). I thus recommend a total award of attorney's fees as outlined in the table below.

| ATTORNEY'S FEES AWARD | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Requested Rate** | **Requested Hours** | **Recommended Hours (Reduced by 50%)** | **Recommended Total** |
| Kimo S. Peluso | $520 | 2.3 | 1.15 | $598 |
| Erica A. Wolff | $487.50 | 29.8 | 14.9 | $7,263.75 |
| Robert C. Penn Jr. | $422.50 | 79.1 | 39.55 | $16,709.875 |
| Inna Zheng | $162.50 | 15.1 | 7.55 | $1,226.875 |
| Chinoia Weir | $162.50 | 14.1 | 7.05 | $1,145.625 |
| **TOTAL ATTORNEY'S FEES AWARD** | | | | **$26,944.125** |

## CONCLUSION

For the reasons stated herein, I respectfully recommend that AEye's motion for default judgment be **GRANTED**. I further recommend that Falcons' answer and affirmative defenses be stricken and its counterclaims be dismissed. AEye should be awarded damages in the amount of $5,000,000, pre-judgment interest at a rate of 9% per annum from August 14, 2021, to the date of judgment in this case, and $26,944.13 in attorney's fees.

DATED: New York, New York
July 13, 2026

VALERIE FIGUEREDO
United States Magistrate Judge

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Ronnie Abrams. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**